In re **ALEXANDER'S INC.,**
et al., **Debtors.**

Bankruptcy Nos. 92–B–42704(CB)
to 92–B–42720(CB).

United States Bankruptcy Court,
S.D. New York.

Jan. 6, 1995.

As Amended Jan. 11, 1995.

Shearman & Sterling by Eileen Wishnia, New York City, for debtor.

Hahn & Hessen by David I. Blejwas, New York City, for Official Creditors' Committee.

Wien, Malkin, Betex by Eli R. Mattioli, New York City, for 500–512 Seventh Ave. Associates, Landlord.

### MEMORANDUM DECISION GRANTING DEBTORS' MOTION TO EXPUNGE CREDITOR'S CLAIM AND DENYING CREDITOR'S MOTION TO ENLARGE TIME FOR FILING PROOF OF CLAIM

CORNELIUS BLACKSHEAR,
Bankruptcy Judge.

Alexander's Inc., *et al.* (the "Debtors") moved to expunge the claim filed by 500–512 Seventh Avenue Associates ("Associates") for failure to timely file its proof of claim pursuant to Rule 3003(c)(3) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). In response, Associates moved to enlarge the time by which to file its claim. This Court finds that Associates' failure to timely file its claim was not due to "excusable neglect." Therefore, this Court grants the Debtors' motion to expunge the claim and denies Associates' motion to enlarge the time by which to file its claim.

### FACTS

On May 15, 1992, the Debtors each filed voluntary petitions for relief under Chapter 11 of Title 11, 11 U.S.C. Section 101 *et seq.* (the "Bankruptcy Code"). By Order of this Court dated May 15, 1992, the Debtors' chapter 11 cases were consolidated for procedural purposes and are being jointly administered.

The Debtors had primarily engaged in retailing and had operated eleven stores in New York and New Jersey. Prior to the filing of the chapter 11 petitions, the Debtors had made a decision to discontinue their retail operations. Consequently, on May 14, 1993, the Debtors filed their joint plan of reorganization (the "Plan") which contemplates that the Debtors will emerge from bankruptcy as real estate operating companies.

Associates, as landlord for the premises on the 8th, 10th and 18th floors (the "Premises") of the commercial office building located at 500 Seventh Avenue, New York, New York (the "Building"), and the Debtors, as tenants, entered into a lease for the Premises dated January 20, 1983 (the "Original Lease"). The Premises were used as the Debtors' executive and buying offices. The Original Lease was amended on October 18, 1991 (the "Amended Lease" or collectively the "Leases") which extended the term of the lease to December 31, 1993.

Helmsley–Spear, Inc. ("Helmsley–Spear") was the managing agent of the Building during the term of the Leases. In the second sentence of the Original Lease, the landlord was declared as "500–512 Seventh Avenue Associates, a partnership having offices in care of Helmsley–Spear, Inc." The first decretal paragraph of the Amended Lease similarly refers to the landlord as "500–512 Seventh Avenue Associates, a general partnership with an office at 60 East 42nd Street, New York, New York 10165." Both the Leases were signed by "Helmsley–Spear, Inc., Managing Agent" and "Helmsley–Spear, Inc., Agent," respectively, on behalf of the landlord, Associates. Throughout the

term of the Leases, the Debtors sent the monthly rent to Helmsley–Spear.

On May 29, 1992, the Debtors filed a motion to reject the Amended Lease (the "Rejection Motion") pursuant to Section 365 of the Bankruptcy Code which was unopposed by Associates. By May 31, 1992, the Debtors had vacated the Premises but left behind certain office fixtures and furniture.

On June 1, 1992, the Debtors filed a motion to abandon the remaining property (the "Abandonment Motion") pursuant to Section 554 of the Bankruptcy Code. Associates responded to the Abandonment Motion by affidavit dated June 8, 1992 (the "Abandonment Response"). Among the other relief requested in the Abandonment Response, Associates sought an administrative priority claim in the amount of $38,700.00 (the "Abandonment Claim"), representing estimated costs to clear the abandoned property left on the Premises.[1] The Abandonment Response, however, did not address the Debtors' rejection of the Amended Lease and failed to assert a claim for damages arising from the rejection of the Amended Lease.

On June 9, 1992, a hearing was held before this Court for the Abandonment and Rejection Motions (the "Hearing"). This Court subsequently signed separate orders authorizing the rejection of the Amended Lease and the abandonment of the property.

On August 4, 1992, the Court set October 16, 1992, as the date by which all claims must be filed (the "Bar Date"). Notice of the Bar Date (the "Notice") was sent to creditors via regular mail on August 17, 1992 and was published in the national editions of the *New York Times* and the *Wall Street Journal*.[2] The Notice specifically provided that claims arising from the rejection of leases be filed:

> [w]ithin 30 days after service of an order of the Court approving such rejection, or such other period set by the Court, or 30 days after service of a notice of such rejection, if such rejection occurred by the expiration of time fixed by the Court.

The Notice was mailed to Helmsley–Spear, at the location of 60 East 42nd Street, Room 5230, New York, NY 10165, and was not returned, as undeliverable, to either the Debtors or to Poorman–Douglas Corporation—the Debtors' claims agent which served the Notice upon Helmsley–Spear.[3] However, Associates alleges that it never received a copy of the Notice and, thus, was not notified of the Bar Date.[4]

On May 14, 1993, the Debtors filed with this Court their first proposed joint plan of reorganization (the "Plan") and disclosure statement (the "Disclosure Statement"). By order dated July 21, 1993 (the "Scheduling Order"), this Court approved the Debtors' Disclosure Statement. On August 3, 1993, the Debtors mailed to all its creditors copies of the Scheduling Order, the Plan, the Disclosure Statement and a ballot for acceptance or rejection of the Plan (collectively the "Solicitation Materials"). The Solicitation Materials were sent to Helmsley–Spear, 60 East 42nd Street, Room 5230, New York, New York 10165—the exact same address to

---

1. This Court notes that Associates did not file a formal proof of claim for this administrative expense but alleged the claim in the Abandonment Response. This Court assumes that Associates intended for this affidavit to constitute an informal Proof of Claim as it fails to conform substantially to the appropriate "official form" as required by Bankruptcy Rule 3001(a). However, this Court notes that the affidavit is sufficient to constitute an "informal" Proof of Claim because this written assertion apprises this Court of the existence, nature and amount of the claim as well as evidences an intent to hold the Debtors liable. *In re South Atlantic Financial Corp.*, 767 F.2d 814, 819 (11th Cir.1985), Weintraub & Resnick, Bankruptcy Law Manual, ¶504 at 5–11, footnote 23 (3d Ed.1992) (citations omitted); 8 King, Collier on Bankruptcy ¶3001–03 at 3001–14 (15 Ed.1994).

2. *See* Affidavit of Jeanne Hall dated August 25, 1992 (stating that the "Proof of Claim" and "Notice of Procedure and Last Day for Filing Proofs of Claim Against Debtors" were sent to all creditors via first class mail).

3. *See* Affidavit of Jeanne Hall, dated April 27, 1994.

4. *See* Affidavit of Valerie T. Rosenson, assistant general counsel of Helmsley–Spear, dated March 18, 1994. Associates further alleges that it became aware of the Bar Date only on December 14, 1993, when it received the Objection to Associates' claim filed on September 27, 1993.

which the Debtors had mailed the Notice. The section pertaining to claims in the Disclosure Statement clearly sets forth the Bar Date established by this Court and described the number and amount of claims which had been filed and the claims process by which claims were reconciled. Both the Scheduling Order and Disclosure Statement also advised creditors that September 21, 1993 was set as the hearing date for confirmation of the Plan. Associates returned the ballot and voted to accept the Debtors' Plan. The Plan was confirmed pursuant to an order of this Court dated September 21, 1993.

On September 27, 1993, almost one year after the Bar Date and over a year after the Rejection Motion was granted, Associates filed a proof of claim in the form of an affidavit signed by Helmsley–Spear for $546,-953.94 (the "September Proof of Claim").[5] On January 11, 1994, after the expiration of the Bar Date, Associates filed a proof of claim, amending its $38,700.00 Abandonment Claim to include lease rejection damages which increased the dollar amount of the claim to $585,653.94 (the "January Proof of Claim). Again, this amendment was signed by Helmsley–Spear and directed the Debtors to send notices with respect to the Associates' claim to "Helmsley–Spear, Inc., c/o Wien, Malkin & Bettex, 60 East 42nd Street, New York, New York 10165, Attn: Robert C. Buff, Esq."

On March 4, 1994, Associates filed yet a second amendment (the "Second Amendment") to a "scheduled claim," increasing the dollar amount of the claim to $606,710.85.[6] This amendment also directs notices to be sent to Helmsley–Spear at the same address.

The Debtors objected to Associates' September Proof of Claim on December 14, 1993. On or about March 22, 1994, Associates responded by filing a motion to extend the time for filing its Proof of Claim ("Extension Motion"). A hearing regarding the Debtor's objection to Associates' claim and Associates' Extension Motion was held on June 23, 1994.

5. Claim No. 2696.

6. The facts are not clear as to which claim Associates is amending. This Court assumes that Associates intended to amend the January Proof of Claim to include a pre-petition claim for ap-

*DISCUSSION*

## I.

### *EXCUSABLE NEGLECT*

■ Bankruptcy Rule 3003(c) sets forth the requirements for filing proofs of claim in chapter 11 reorganization cases. Rule 3003(c)(3) provides that the "court shall fix and for cause shown may extend the time within which proofs of claim or interest may be filed." Rule 9006(b)(1) of the Bankruptcy Rules authorizes the Bankruptcy Court to allow a late filed claim if the creditor failed to comply with the Bar Date due to "excusable neglect." Bankruptcy Rule 9006(b)(1) states in relevant part:

> Except as provided ..., when an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion ... on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of *excusable neglect* (emphasis added).

Rule 9006(b)(1) of the Federal Rules of Bankruptcy Procedure.

■ The Supreme Court recently visited the issue of "excusable neglect" in *Pioneer Investment Services Co. v. Brunswick Assoc. Ltd. Partnership*, 507 U.S. ——, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). Excusable neglect is defined as "an equitable consideration taking all relevant factors of the party's omission and not merely circumstances that were beyond the party's control." *Id.* 507 U.S. at ——, 113 S.Ct. at 1494. The relevant factors to be taken into consideration when determining whether excusable neglect exists include: (i) the adequacy of the notice; (ii) the danger of prejudice to the debtor; (iii) the length of the delay and its potential impact on the judicial proceedings; (iv) the reason for the delay, including whether it was within the reasonable control of the

proximately $21,000 arising from electricity charges due under the Amended Lease, which claim was listed by the Debtors as owing to Helmsley–Spear.

creditor; and (v) the good faith of the creditor. *Id.*, 507 U.S. at ——, 113 S.Ct. at 1497; *In re R.H. Macy & Co., Inc.*, 161 B.R. 355, 361 (Bankr.S.D.N.Y.1993).

## A. *Adequacy and Service of Notice*

 In order to satisfy due process requirements, Associates, a known creditor, was entitled to receive actual notice of the Bar Date. *City of New York v. New York, New Haven & Hartford R.R. Co.*, 344 U.S. 293, 296, 73 S.Ct. 299, 301, 97 L.Ed. 333 (1953). Associates argues that notice was inadequate because the Debtors, instead of listing Associates, improperly listed Helmsley–Spear as the creditor on their schedules of assets and liabilities and statements of financial affairs (the "Schedules"). Associates cites *In re Arts des Provinces de France, Inc.*, 153 B.R. 144 (Bankr.S.D.N.Y. 1993), wherein the court allowed a late filed claim, in part, because the debtors listed the managing agent instead of the landlord as a creditor on their schedules.

This Court concurs with the ruling in *In re Arts des Provinces* that debtors must list the proper creditors on their schedules pursuant to Bankruptcy Rule 1007(a)(1). However, under the circumstances of this case, we find that Helmsley–Spear was the proper party to list on the Debtors' schedules.

Both the Original and the Amended Leases listed Helmsley–Spear as Associates' "Managing Agent" and "Agent", respectively. Indeed, Helmsley–Spear signed both Leases on behalf of Associates. Moreover, Helmsley–Spear also signed the September Proof of Claim, the January Proof of Claim and the Second Amendment filed by Associates. Each proof of claim and the amendment thereto directed the Debtors to send notices pertaining to Associates' claim to Helmsley–Spear. From the record and papers submitted, there is no evidence before this Court that the Debtors dealt with Associates in any direct manner except through Helmsley–Spear. Helmsley–Spear, therefore, was the proper party for the Debtors to list on their schedules.

Associates proceeds to make three related arguments. Associates claims that the Notice should have been sent to Associates and not to Helmsley–Spear. Associates also argues that the Debtors violated Bankruptcy Rules 2002(a) and 9010(b). This Court, for the same reasons as stated in the preceding paragraphs, does not find these arguments to be persuasive.

 Moreover, this Court notes that Bankruptcy Rule 7004(b)(3) allows service by first class mail to be made upon a managing agent of a partnership.[7] Similarly, under New York law, notice to an agent is proper notice even if notice was never actually communicated to the principal. *Farr v. Newman*, 14 N.Y.2d 183, 187, 250 N.Y.S.2d 272, 275, 199 N.E.2d 369, 371 (N.Y.Ct.App.1964). Undeniably, Helmsley–Spear was acting as agent for Associates. As agent, Helmsley–Spear was the proper party to serve.[8]

Associates also relies on *Arts des Provinces* and Bankruptcy Rule 9010(b)[9] to argue that the Notice was inadequate because the Debtors failed to send it to Associates' attorneys. This Court disagrees and finds *Arts*

---

**7.** Rule 7004(b)(3) states in relevant part:

Upon a domestic or foreign corporation or upon a partnership or other unincorporated association, by mailing a copy of the summons and complaint to the attention of an officer, *a managing or general agent, . . .* (emphasis added)

**8.** Additionally, although Associates contend that the Debtors violated Bankruptcy Rule 2002(g) by sending the Notice to the 60 East 42nd Street address, this Court finds no such violation. Bankruptcy Rule 2002(g) states in relevant part: Addresses of Notices. All notices required to be mailed under this rule to a creditor . . . to the address shown in the list of creditors or the schedule whichever is filed later.

As noted previously on the Leases, Associates listed its address as that of Helmsley–Spear. Since the address of Helmsley–Spear is also the address of Associates, it was, thus, the proper address to send the Notice. It is also noteworthy that Associates failed to object to service of the Solicitation Materials when the Debtor had served Helmsley–Spear.

**9.** Bankruptcy Rule 9010(b) provides in relevant part:

An attorney appearing for a party in a case under the Code shall file a notice of appearance with the attorney's name, office address and telephone number unless the attorney's appearance is otherwise noted in the record.

*des Provinces* distinguishable from the circumstances present in this case. In *Arts des Provinces*, the court held that the notice was improperly served because it was not served upon the creditor's attorney. However, the creditor's attorneys in *Arts des Provinces* filed notices of appearance on behalf of the creditor and requested a copy of all notices and papers directed to their client. In contrast, Associates' attorneys failed to file any notices of appearance in this case. Instead, they were merely noted on the record during the Hearing. It is disingenuous for Associates to argue that since they were noted on the record during that specific hearing, *all* notices pertaining to the Debtors' Chapter 11 cases should have been sent to Associates' attorneys. Appearance for a hearing, on a limited motion within the bankruptcy proceeding, is not the equivalent of putting the Debtors on notice for all matters within the entire bankruptcy proceeding. Therefore, the Debtors were under no obligation under Bankruptcy Rule 9010(b) to send *all* notices to Associates' attorneys.[10]

### B. *Receipt of Notice*

Associates further alleges that Helmsley–Spear, and thus itself, never received notice of the Bar Date. This Court dismisses such an argument. It is black letter law that once an item is properly mailed, the law presumes that it is received by the addressee. *See, Hagner v. United States*, 285 U.S. 427, 430, 52 S.Ct. 417, 419, 76 L.Ed. 861 (1932); *R.H. Macy*, 161 B.R. at 359; *Capital Data Corp. v. Capital National Bank*, 778 F.Supp. 669, 675 (S.D.N.Y.1991) (even if a statute required receipt, evidence by way of affidavit of service invokes presumption of receipt). The Debtors have established this presumption with respect to Associates by way of the affidavits of Jeanne Hall, an employee of Poorman–Douglas Corporation, who had sworn that a proof of claim form and the Notice were addressed to

Helmsley–Spear and were properly deposited in the mail system on August 17, 1992.[11]

It is the claimant's responsibility to rebut the presumption of receipt of the Notice. *Meckel v. Continental Resources Co.*, 758 F.2d 811, 817 (2nd Cir.1985) (proof in addition to denial of receipt necessary to rebut the presumption that the notice was mailed); *Dependable Insurance Co. v. Horton*, 149 B.R. 49, 58 (Bankr.S.D.N.Y.1992) (affidavits of employees denying receipt of bar notice not enough to rebut presumption of receipt). Associates and Helmsley–Spear dispute receiving the Notice; yet, neither has offered sufficient evidence to rebut the presumption of receipt. Since the law presumes that a properly mailed notice is received by the addressee, the addressee must do more than simply deny that it received notice. *Meckel*, 758 F.2d at 817; *R.H. Macy*, 161 B.R. at 360. Associates merely submits an affidavit denying receipt of the Notice.[12] Without more evidence, Associates cannot override the presumption that the Notice was received.[13] This Court, therefore, finds that Associates did receive adequate notice of the Bar Date.

### C. *Prejudice to the Debtors*

Associates claims there will be no prejudice to the Debtors if its claim is allowed. Again, Associates cite *In re Arts des Provinces* in support of its position. The court in that case held that a debtor cannot claim prejudice when a landlord files a late claim for rent due under a lease rejection because the claim was expected. *Arts des Provinces*, 153 B.R. at 147. Thus, Associates argues that the Debtors expected that Associates would have a claim for lease rejection damages. The Debtors concede that they expect a claim for lease rejection damages but claim to be surprised by the magnitude of Associates' claim filed one year and three months after the rejection. The Debtors

---

**10.** Again, this Court notes that on the various Proofs of Claims filed by Associates, Associates *itself* directed that all documents pertaining to its' claim be sent to Helmsley–Spear.

**11.** *See* Affidavits of Jeanne Hall, dated August 25, 1992 and April 27, 1994.

**12.** *See* Affidavit of Valerie T. Rosenson, assistant general counsel to Helmsley–Spear, dated March 18, 1994.

**13.** This Court notes that the Notice sent to Helmsley–Spear was neither returned to the Debtors nor to its claims agent as undeliverable.

expected some mitigation of the damages by the reletting of the rejected Premises.[14]

■■■ While the Court is cognizant that a claim for rejection damages would be expected, expectation is merely one factor in determining prejudice to a debtor. Other factors including confirmation of a plan of reorganization have been considered in determining prejudice to a debtor. *See, e.g., In re Drexel Burnham Lambert Group, Inc.,* 148 B.R. 1002, 1007 (S.D.N.Y.1993) ("acceptance of a substantial late claim after consummation of a vigorously negotiated claims settlement and Plan of Reorganization thereon and a distribution of a major part of the assets thereunder, would disrupt the economic model on which the creditors, the debtor and the stockholders reached their agreements").[15]

Similarly, the Debtors and other creditors will be prejudiced because the Proof of Claim was filed after the Debtors' Plan was formulated, negotiated and confirmed. Debtors had proposed the Plan based upon a claims analysis that was undertaken during the seven-month period following the Bar Date which did not include Associates' substantial claim of over a half a million dollars. Creditors who had timely filed their claims voted on a Plan based on this estimate. Additionally, the assets in this case have already been partially distributed. Thus, allowance of Associates' claim would disrupt the "economic model" on which all parties reached their agreements.

### D. *Length of Delay and Impact on the Judicial Proceedings*

Other factors in determining prejudice to the Debtors includes the length of the delay and a potential impact on the judicial proceedings. *Pioneer,* 507 U.S. at ——, 113 S.Ct. at 1497. The length of delay in this case is substantial. Associates filed its Proof of Claim on September 27, 1993, almost one year after the bar Date and over a year after the Debtors rejected the Lease. Associates attempts to justify its failure to timely file by claiming that it did not want to file its claim until it had a reasonable idea as to the amount of the claim. However, this Court notes that nothing prevented Associates from timely filing a Proof of Claim and subsequently amending it to reflect actual damages that it incurred. Instead, Associates waited until approximately six weeks *after* it had received the Solicitation Materials and almost a week after the Plan's confirmation date of September 21, 1993 to timely file.

Administration of the Debtor's case will be adversely affected if Associates' claim were to be allowed. Allowing Associates' claim will now result in an upheaval in the claims reconciliation process,[16] require recomputation and recasting of everything which had occurred in reliance on timely filed claims, including issues related to the Plan which has been confirmed.

The reason for the delay and whether it was within Associates' reasonable control is another factor to be considered. As previously discussed, it was well within Associates' control to timely file its Proof of Claim. Further, this Court finds that Associates is a sophisticated creditor and was aware that it would have a claim for damages arising from the rejection of its Lease almost a year and three months before it filed its claim. Moreover, it received the Solicitation Materials containing clear references to the Bar Date and it voted for the proposed Plan which was subsequently approved. Yet it filed its formal Proof of Claim almost six weeks after it had received the Solicitation Materials. In light of the foregoing, this Court finds that the filing of the Proof of Claim was clearly within Associates' reasonable control.[17]

## II.

### *AMENDMENTS TO PREVIOUSLY FILED CLAIMS*

■■■ This Court's conclusion that Associates' failure to timely file its claim is not due

---

**14.** *See* Debtors' Memorandum of Law in Opposition to Motion to Enlarge Time for Filing Proof of Claim at 12.

**15.** *See, also, In re Au Coton, Inc.,* 171 B.R. 16, 18 (S.D.N.Y.1994) (holding that a late filed claim would not prejudice the debtor where no plan of reorganization had yet been filed).

**16.** The Debtors' claim reconciliation process is "a mature one" having resolved over 1,000 claims.

**17.** This Court will not discuss the issue of good faith because it finds no genuine issue in dispute.

to "excusable neglect" does not end the inquiry. This Court will address an issue raised by the Debtors that Associates improperly amended its Abandonment Claim.[18]

 Amendments after the Bar Date are to be scrutinized very closely to insure that the amendment is in fact genuine and not entirely a new claim. *In re W.T. Grant Co.*, 53 B.R. 417, 422 (Bankr.S.D.N.Y.1985) (citations omitted). It is equally clear that an amendment to a claim may not advance a wholly new claim or theory of liability based on different facts. 8 King, *Collier on Bankr.* ¶ 3001.03 at 3001–14 (15th Ed.1994).

In Associates' January Proof of Claim and the Second Amendment, Associates attempts to amend its claim for damages which arose from the Debtors' Abandonment Motion to include its claim for damages which arose from the Debtors' Rejection Motion. The theory of liability is obviously different for both claims. The damages from the Rejection Motion arises from Section 365 of the Bankruptcy Code while Associates' claim for damages from the Abandonment Motion arises from Section 554 of the Bankruptcy Code. Moreover, these two claims do not arise from identical facts. The Abandonment claim arose from the Debtors' abandonment of its property on the Premises. That the Debtors abandoned property does not equate to a claim for rejection damages. Thus, this Court concludes that Associates' amendments of its Abandonment claim is improper because it advances an entirely new claim.[19]

## III.

### CONCLUSION

1. Associates' delay in filing its proof of claim did not result from "excusable neglect."

2. The Debtors' Motion to Expunge the Claim for Failure to timely file is hereby **GRANTED**.

3. Associates' Motion to Enlarge Time for Filing its Proof of Claim is hereby **DENIED**.

**THE DEBTOR IS TO SETTLE AN ORDER CONSISTENT WITH THIS OPINION ON FIVE (5) DAYS NOTICE.**

18. *See* Debtors' Memorandum in Opposition to Motion to Enlarge Time for Filing Proof of Claim at 12.

19. Even if Associates had meant to amend a "scheduled" proof of claim in its Second Amendment, the same rationale would apply, making it an impermissible amendment.