Rogers W. CLARK, et al.

v.

AMERICA'S FAVORITE CHICKEN CO., et al.

Civ. A. No. 93–3029.

United States District Court, E.D. Louisiana.

Dec. 13, 1995.

Stephen G. Bullock, Stephen H. Kupperman, Phillip A. Wittmann, Stone, Pigman, Walther, Wittmann & Hutchinson, William David Aaron, Jr., Nancy Eleanor Graham, Brent Bennett Barriere, Bruce Victor Schewe, Phelps Dunbar, New Orleans, LA, Robert V. Seymour, Sallen, Sallen, Seymour & Sallen, Southfield, MI, for plaintiffs.

Steven W. Copley, Ernest Enrique Svenson, Martin E. Landrieu, Gordon, Arata, McCollam & Duplantis, New Orleans, LA, Peter J. Klarfeld, Brownstein, Zeidman & Lore, Washington, DC, Kenneth J. McIntyre, John A. Krsul, Jr., Dickinson, Wright, Moon, Vandusen & Freeman, Detroit, MI, David B. Kaplin, Brownstone, Zeidman & Lore, James C. Rubinger, Wiley, Rein & Fielding, Washington, DC, for America's Favorite Chicken Co.

James B. Irwin, V, Robert Ellsworth Durgin, Montgomery, Barnett, Brown, Read, Hammond & Mintz, New Orleans, LA, David F. Graham, David B. Johnson, Sidley & Austin, Chicago, IL, Eugene Driker, Barris, Sott, Denn & Driker, Detroit, MI, for Canadian Imperial Bank of Commerce.

Richard Anthony Goins, Mark Raymond Beebe, Adams & Reese, New Orleans, LA, for Frank Belatti, Belatti Consulting Group, Ltd.

## ORDER AND REASONS

JONES, District Judge.

Before the Court is "Defendant America's Favorite Chicken Company's Motion for Reconsideration of the Court's July 6, 1994 Order Denying the Motion for Partial Summary Judgment." Having considered the memoranda of the parties, the record and the applicable law, the Court GRANTS the motion and GRANTS partial summary judgment in mover's favor.

### Background

Plaintiffs are "Popeyes Fried Chicken" fast-food restaurant franchisees in Detroit who filed this lawsuit against America's Favorite Chicken Company (hereinafter "AFC") and Canadian Imperial Bank of Commerce (hereinafter "CIBC"), alleging breach of contract (express and implied), promissory estoppel, unfair trade practices, tortious interference with contract and business relationship, abuse of rights and conspiracy against CIBC.[1]

The action arises out of allegations that, since the merger of Popeyes and Church's Fried Chicken in March 1989,[2] plaintiffs have been subjected to various actions by defendants that have caused them damages. These actions revolve around alleged marketing policies that favor Popeyes as upscale stores and Church's as low-scale fried chicken outlets.

Plaintiffs contend that the predecessor of AFC, Al Copeland Enterprises (hereinafter "ACE"), and AFC made certain promises to them that their inner-city Popeyes' franchises in Detroit would remain price-competitive with other fast food outlets, particularly Church's.[3] Plaintiffs allegedly pioneered a system of advertising competitive with Church's.[4] Further, ACE encouraged Plaintiffs to select sites immediately adjacent to existing Church's restaurants.[5]

Later, after ACE bought Church's, and after AFC took over ACE, ACE and CIBC or AFC and CIBC conspired to operate a dual-marketing strategy to restrain, elimi-

1. See "Fifth Supplemental and Amended Complaint." (R.Doc. 188.) Plaintiffs in this last amended complaint also named as defendants Frank Belatti and Belatti Consulting Group, Ltd., but their addition as defendants is not pertinent to this motion.

2. Id., ¶ 18.

3. Id., ¶ 14.

4. Id., ¶ 15.

5. Id., ¶ 11.

nate and lessen competition between Popeyes and its franchisees and Church's.[6]

AFC seeks reconsideration of the "Order and Reasons" issued by the judge to whom this case was previously allotted denying AFC's motion for partial summary judgment.[7] In that motion AFC sought, as it does now, dismissal of plaintiffs' claims to the extent that they arose prior to November 5, 1992, which is the undisputed effective date of the Bankruptcy Court's order confirming a Plan of Reorganization for ACE, AFC's predecessor.[8]

AFC argues that to allow these claims to proceed when plaintiffs failed to file any claims in the bankruptcy proceedings undermines the goal of bankruptcy to allow the debtor a "fresh start." Specifically, AFC posits that plaintiffs have failed to show "excusable neglect" and that the notice sent to plaintiffs informing them of the "bar date" as to filing proofs of claim satisfies due process under the Constitution.

Plaintiffs dispute that the notice sent to them comports with due process. Further, plaintiffs maintain that they have shown "excusable neglect" and that there remain genuine issues of material fact under applicable law such that the prior decision was correct.[9]

### Law and Application

#### I.   Standard for Reconsideration

■   "[B]ecause the denial of a motion for summary judgment is an interlocutory order, the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Lavespere v. Niagara Machine & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir.1990), *citing* Fed. R.Civ.P. 54(b) and *Bon Air Hotel v. Time, Inc.*, 426 F.2d 858, 862 (5th Cir.1970).

■   Although the law does not require a change or clarification of the law in order to reconsider a prior ruling, the Court notes that there *has* been a change and/or clarification of existing law as to "excusable neglect" in the recent decision of *Greyhound Lines, Inc. v. Rogers (In re Eagle Bus Manufacturing, Inc.)*, 62 F.3d 730 (5th Cir.1995). Additionally, the parties have again raised and briefed the issue of due process at length, the legal standards of which were not discussed in detail by the previous judge. Hence, the Court exercises its discretion to reconsider the earlier denial of partial summary judgment.

#### II.   Standard for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is proper "if the pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." (Emphasis added.) The mover first bears the burden of "coming forward with the absence of genuine issues of material fact...." *Kinsey v. Farmland Industries, Inc.*, 39 F.3d 603, 606 (5th Cir.1994), *citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1956).

If the mover meets its burden, the non-movant's burden of then showing a genuine issue of material fact "is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corporation*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*). Further, "factual controversies [are resolved] in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Id.*

---

**6.**   *Id.*, ¶¶ 22–24.

**7.**   R.Doc. 61.

**8.**   *Id.* at 1–3.

**9.**   As further procedural background, the Court notes that this motion was previously set for hearing in January 1995, when the trial was also

scheduled. However, the trial and hearing on this motion were continued without date following the Court's disqualification of plaintiffs' counsel in December 1994. (R.Doc. 171.) Following plaintiffs' retention of new counsel, AFC set this matter for hearing once again. (R.Doc. 197.)

In other words, the inferences drawn from the underlying facts, however, must be viewed in a light most favorable to the non-moving party. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588, 106 S.Ct. 1348, 1357, 89 L.Ed.2d 538 (1986). The substantive law determines materiality of facts, and only facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

In essence, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. at 2511.

## III. Facts—Disputed and Undisputed

In the prior ruling, the Court listed the undisputed facts as follows:[10]

1. In April, 1991, AFC's predecessor, ACE [sic] filed a petition for relief under the Bankruptcy Code in Texas;

2. Also in April, 1991, a notice of the bankruptcy proceeding was sent to all POPEYES franchises, including the plaintiffs. That notice was entitled "Order for Meetings of Creditors and Related Order, Combined with Notice Thereof and of Automatic Stay." It included, on the first page, the directive that any creditor holding a claim "who desires to participate in the cases or share in any distribution must file proof of the claim." It then stated, in capital letters: "THE LAST DAY TO FILE PROOFS OF CLAIM IN THIS CASE IS SEPTEMBER 30, 1991";

3. The plaintiffs did not file a proof of claim prior to September 30, 1991, and in fact never filed a proof of claim in the bankruptcy court;

4. On October 22, 1992, the Bankruptcy Court entered an order, confirming a Plan of Reorganization, effective November 5, 1992. The order stated in part that "any proof of claim filed subsequent to the Effective Date shall be disallowed, null and void";

5. Plaintiffs' current law suit [sic] was filed in April, 1993.[11]

The disputed facts surround whether plaintiffs understood what was meant by the notice and the "bar date" that proofs of claim had to be filed no later than September 30, 1991. For example, in his affidavit, Roger R. Burney, one of the plaintiffs, states that "[w]hen I read the Order for Meetings, I did not understand it to mean that failure to file a claim in the bankruptcy proceeding might result in forfeiture of my rights to assert claims against or to recover from ACE, or any successor corporation, in a separate litigation proceeding."[12] Burney further intones: "When I read the Order for Meetings, I did not understand what was meant by the term 'bar date.' In fact, I did not understand the term until AFC raised it in the present litigation."[13] As will be seen, the central question is whether such a misunderstanding constitutes a genuine issue of material fact under the applicable law.

## IV. Due Process

■ Before discussing the standards by which this Court must determine whether plaintiffs have shown "excusable neglect," the Court addresses the signal issue of due process, *i.e.*, whether the "Order for Meetings" meets the standard necessary to comply with due process. In addition to discussing "excusable neglect," the *Greyhound* court also answered a question as to whether the notice in that case met the due process requirement

---

**10.** Neither plaintiffs nor AFC contend that the Court erred in these findings.

**11.** R.Doc. 61, pp. 2–3.

**12.** Affidavit of Roger R. Burney, attached as Exh. B to plaintiffs' memorandum in opposition. (R.Doc. 77.) The "Order for Meetings" referred to in the affidavit is the "Order for Meetings of Creditors and Related Order, Combined with Notice Thereof and Automatic Stay," a copy of which is attached as Exh. 1 to AFC's motion. (R.Doc. 63.) The Court hereafter adopts the shorthand form "Order for Meetings" in referring to this notice.

**13.** *Id.*

for notice in a bankruptcy case. The Court stated:

"A creditor's claim can be barred for untimeliness only upon a showing that it received reasonable notice." Determining whether a creditor received adequate notice depends on the facts and circumstances of each case. Due process requires notice that is "reasonably calculated to reach all interested parties, reasonably conveys all of the required information, and permits a reasonable amount of time for response." A claimant may therefore file a late proof of claim if he can show that failure to allow the filing would be violative of due process.

*Greyhound Lines,* 62 F.3d at 735 (citations omitted). The *Greyhound* court's discussion of due process centered on whether the creditors had received the notice sent, *id.* at 735–36, and the only description of the notice indicated that "packets" were mailed to creditors "containing a notice of the bar date, a proof of claim form, notice of the first creditor's meeting, and a map to such meeting...." *Id.* at 732–33.

In an earlier case, the Fifth Circuit summarized the requirement of due process in the context of notice in a bankruptcy case as follows:

[A]ll constitutional due process requires ... is that [the creditor] have "notice reasonably calculated, under all the circumstances, to apprise [him] of the pendency of the action and afford [him] an opportunity to present [his] objections."

*Grossie v. Sam (In re Sam),* 894 F.2d 778, 781 (5th Cir.1990) (editing in internal quotation in original), *quoting Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). In *Sam* the Fifth Circuit held that the plaintiff's attorney's receipt of a Notice of Automatic Stay of plaintiff's constitutional tort lawsuit due to the debtor's filing of bankruptcy did not violate due process and, hence, plaintiff's objection to debtor's discharge filed 18 days after the deadline for objecting was time-barred. *Sam,* 894 F.2d at 778–79.[14]

In this case, the Court concludes that the "Order for Meetings" comports with due process. Although the instructions as to the filing of proofs of claim is contained in a notice that initially informs creditors as to a meeting of creditors, the "Order for Meetings" also reads, in pertinent part:

The Debtor [ACE] will file lists of creditors and ... schedules.... Any creditor holding a claim which is not scheduled, not properly scheduled, or is scheduled as disputed, contingent, or unliquidated as to amount and who desires to participate in the cases or share in any distribution must file a proof of claim. THE LAST DAY TO FILE PROOFS OF CLAIM IN THIS CASE IS SEPTEMBER 30, 1991.[15]

The Court finds that this language constitutes "notice reasonably calculated, under all the circumstances," to apprise plaintiffs of the pendency of ACE's bankruptcy and to afford them an opportunity to file a claim in or object to ACE's bankruptcy. *Mullane, supra.* As the *Sam* decision put it, this is "all [that] constitutional due process requires." *Id.* at 781.

Similarly, pursuant to the teaching of *Greyhound,* the Court finds that the "Order for Meetings" "reasonably convey[ed] all of the required information" for plaintiffs to know that ACE had filed bankruptcy and, in effect, to object or file any claims that they believe they had against ACE.[16]

The Court also notes that the "Order for Meetings" substantially follows the Official Bankruptcy Forms in force and effect in April 1991, *i.e.,* former Official Bankruptcy

---

**14.** The Fifth Circuit case cited by plaintiffs for a determination as to the proper due process standard, *Matthias v. Bingley,* 906 F.2d 1047, 1051–53, *modified on denial of rehearing,* 915 F.2d 946 (5th Cir.1990), is factually distinguishable because it involved government seizure of property and faulty notice procedures connected therewith, not notice provided by a bankruptcy court pursuant to Official Bankruptcy Forms, as explained herein.

**15.** Exh. 1, attached to ACF's motion. (R.Doc. 63.)

**16.** There also can be no dispute that the April 1991 "Order for Meetings" gave plaintiffs a reasonable time, approximately five months, within to file their claims. *See Greyhound,* 62 F.3d at 730.

Form No. 16, and also tracks substantially the new form for "Order for Meetings" for corporate bankruptcies pursuant to Chapter 11. *See* Official Bankr.Forms 9F and 9F (Alt.). Indeed, the "Order for Meetings" is even more explicit than former Official Bankruptcy Form No. 16 in spelling out the deadline for the last date of filing claims. Former Official Bankruptcy Form No. 16 provided, in pertinent part: "Creditors ... must file their proofs of claim on or before [Insert Date], which date is hereby fixed as the last day for filing a proof of claim...." The instant "Order for Meetings" provided: "Any creditor ... must file a claim. THE LAST DAY TO FILE PROOFS OF CLAIM IN THIS CASE IS SEPTEMBER 30, 1991." [17] Further, both former Fed.R.Bankr.P. 9009 in effect in 1991 and present Rule 9009 provide that the Official Forms "shall be observed and used with alterations as may be appropriate." The minor alternation made on the "Order for Meetings" in this case is not only appropriate but also more explicit than the form.

The Court also addresses the effect, if any, of the discussion in *Pioneer Investment Services v. Brunswick Associates,* 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993) of the sufficiency of notice in a bankruptcy case as to due process concerns. The Supreme Court considered significant the fact that

> the notice of the bar date provided by the Bankruptcy Court ... was outside the ordinary course in bankruptcy cases. As the Court of Appeals noted, ordinarily the bar date in a bankruptcy case should be prominently announced and accompanied by an explanation of its significance. We agree with the court that the "peculiar and inconspicuous placement of the bar date in a notice regarding a creditors['] meeting, without any indication of the significance of the bar date, left a "dramatic ambiguity" in the notification.

*Id.* at 396–99, 113 S.Ct. at 1499–1500 (editing in original). The notice provided as follows:

> You must file a proof of claim if your claim is scheduled as disputed, contingent or unliquidated, is unlisted or you do not agree with the amount. See 11 U.S.C. Sec. 1111 & Bankruptcy rule 3003. Bar date is August 3, 1989.

*Id.* at 384, 113 S.Ct. at 1492.

The Court finds that *Pioneer Investment Services* is inapposite as to due process for several reasons. First, the notice in the instant case did not use the cryptic words "bar date" but instead specifically informed creditors to file proofs of claim by a certain date. Second, unlike the notice in *Pioneer Investment Services,* which was criticized by the Sixth Circuit for not complying with the Official Forms of the Federal Rules of Bankruptcy Procedure, *Brunswick Associates Limited Partnership v. Pioneer Investment Services Co. (In re Pioneer Investment Services Co.),* 943 F.2d 673, 678 (6th Cir.1991), *aff'd* 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993), the notice in this case substantially complies with Official Form 16 in effect at 1991, as explained above. Third, both the Sixth Circuit and the Supreme Court discussed the issue of inadequacy of the notice in *Pioneer Investment Services* in terms of one of the factors necessary for a finding of "excusable neglect" under Fed.R.Bankr.P. 9006(b)(1), not in terms of due process. *Pioneer Investment Services,* 507 U.S. at 380–82, 396–99, 113 S.Ct. at 1491, 1499–1500; *In re Pioneer Investment Services Co.,* 943 F.2d at 678. Therefore, *Pioneer Investment Services* is distinguishable.

■ Against the foregoing backdrop of law, the Court finds that the fact that at least one of the plaintiffs may not have understood that failure to file claims in the bankruptcy court meant that such claims would be forfeited is immaterial. Exact understanding is not the standard for due process; "notice, reasonably calculated" to inform plaintiffs of ACE's bankruptcy and to allow them to object is the standard by which the "Order for Meetings" is judged for due process. [18]

---

17. Exh. 1, attached to plaintiffs' memorandum in support. (R.Doc. 63.)

18. Additionally, and separate from the foregoing finding, the Court notes that while plaintiff Burney claims a lack of understanding, at least one plaintiff—Franchise Management Unlimited, Inc. (hereinafter "FMU"), which allegedly is owned by individual plaintiffs Clark and Burney, underwent its own Chapter 11 bankruptcy reorganization in 1987, as admitted by plaintiffs in "Coun-

Therefore, the Court holds that the "Order for Meetings" satisfied the constitutional requirement for due process of notifying plaintiffs of ACE's bankruptcy and of giving them an opportunity to object if they so desired. On summary judgment plaintiffs have failed to raise a genuine issue of material fact to show that due process was not satisfied.

## V. Excusable Neglect

■ Having determined that the "Order for Meetings" met the requirement for due process, the Court turns to the argument that plaintiffs' claims also cannot be made under the doctrine of "excusable neglect." *See Pioneer Investment Services v. Brunswick Associates, supra.*

The Court first questions whether this doctrine is even applicable because, unlike the factual situations in *Pioneer Investment Services* and *Greyhound,* plaintiffs have never even attempted to file a claim in the bankruptcy court, choosing to file this lawsuit instead. *Pioneer Investment Services,* 507 U.S. at 382–84, 113 S.Ct. at 1492 (proof of claim filed twenty days after deadline for filing proofs of claim); *Greyhound,* 62 F.3d at 732 (motions for leave to file proofs of claim filed six to eight months after the deadline). Additionally, the Fifth Circuit in *Greyhound* treated the issues of due process and "excusable neglect" separately and did not merge them. *Id.* at 734–41. Moreover, as explained by *Pioneer Investment Services,* the doctrine of "excusable neglect" arises in the context of the late-filing of proofs of claim under Fed.R.Bankr.P. 9006(b)(1), which "empowers a bankruptcy court to permit a late filing if the movant's failure to comply with an earlier deadline 'was the result of excusable neglect.'" *Pioneer Investment Services,* 507 U.S. at 382, 113 S.Ct. at 1491–92. Nevertheless, the Court briefly addresses the issue and determines that,

even under this doctrine, plaintiffs' argument falls woefully short.

■ In making a finding as to "excusable neglect," courts should consider:

> the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within reasonable control of the movant, and whether the movant acted in good faith.

*Greyhound,* 62 F.3d at 737, *quoting Pioneer Investment Services,* 507 U.S. at 396, 113 S.Ct. at 1498. "Under *Pioneer,* the central inquiry is whether the debtor will be prejudiced." *Greyhound,* 62 F.3d at 737. Therefore, the Court begins its analysis with this factor.

Certainly, there is prejudice to ACE where plaintiffs did not file any proof of claim in the bankruptcy court yet seek to litigate preconfirmation date allegations of wrongdoing in a separate lawsuit filed approximately five months after the confirmation date. Indeed, this is exactly the situation alluded to by the Fifth Circuit in *Greyhound,* which contrasted the fact situation there with "a situation where the debtor's plan was formulated, negotiated, and confirmed before notice was given of a substantial late claim." *Id. See Florida Dept. of Insurance v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.),* 148 B.R. 1002, 1007–08 (S.D.N.Y.1993) ("acceptance of a substantial late claim after consummation of a vigorously negotiated claims settlement and Plan of Reorganization thereon and a distribution of a major part of the assets thereunder, would disrupt the economic model on which the creditors, the debtor and the stockholders reached their agreement); *In re Alexander's Inc.,* 176 B.R. 715, 722 (Bankr. S.D.N.Y.1995) (same).[19]

ter–Defendants' Answer and Affirmative Defenses to Counterclaim." (R.Doc. 13, filed in United States District Court, Eastern District of Michigan, Southern Division, prior to the transfer of this matter to this Court.) Although sophistication is not necessarily a factor to be considered as to due process, *but see Milstein v. Werner,* 57 F.R.D. 515, 518 (S.D.N.Y.1972) (notice to shareholders of hearing to review compromise of derivative suit "was sufficient, timely and reasonably clear to the minimally sophisticated layman

and satisfied requirements of due process" and Fed.R.Civ.P. 23), the Court notes that plaintiff FMU certainly was not an unsophisticated entity insofar as bankruptcy proceedings are concerned.

19. Although the Fifth Circuit declined to follow *Drexel Burnham Lambert* and *Alexander's* because of the factual situation in *Greyhound,* the court of appeals did not disagree with the hold-

Additionally, the Court finds the length of the delay—approximately nineteen months from the bar date and five months from the confirmation date—to be significant and "egregious," *id.* at 739, especially when no proofs of claim were filed. Further, unlike *Greyhound*, there has been no showing that ACE caused the delay in this matter. *Id.* Although there will be no impact on the administration of the bankruptcy case because of the delay, this is because the debtor's confirmation plan has been confirmed and plaintiffs' complaint comes after that fact.

█ As for the reason given for the delay, Burney's affidavit states that there was a lack of understanding that he would lose his claims if proofs of claim were not filed. "The standard for determining whether a party's neglect of a deadline is excusable is a flexible one because it is rooted in equity." *Id.* In *Greyhound* the court of appeals found that the claimants' failure to file proof of claims was not beyond their control but was due partly to an order of the bankruptcy court mandating the use of Alternate Dispute Resolution. *Id.* Further, *Greyhound* noted that the "warning provided to creditors about the need for filing their proofs of claim" was not conspicuous and was "embedded in twelve pages of text describing the ADR procedures." *Id.* at 740 and n. 12. In this case, there has been no showing that other factors as in *Greyhound* were present. Plaintiffs merely rely on their lack of understanding in the face of plain language in the "Order for Meetings" emphasized by the use of capital letters to file their proofs of claim by September 30, 1991. The Court finds that, based upon equity and the present record, there was no excuse for the plaintiffs'

failure to file proofs of claim by the deadline, much less failure to file them at all.[20]

Finally, although "good faith" is listed as a factor in *Pioneer Investment Services,* as in *Greyhound* there is no evidence of bad faith on the part of plaintiffs. *Greyhound,* 62 F.3d at 737.

In summary, because the danger of prejudice to the debtor is self-evident in allowing plaintiffs to proceed on pre-confirmation claims in a lawsuit following confirmation—when plaintiffs have failed to show reasonable, equity based arguments for their failure to file proofs of claim in the bankruptcy matter—"excusable neglect" does not exist in this case.

VI. Conclusion

Because the Court holds that the "Order for Meetings" sent to plaintiffs complies with the standard necessary for due process, and because plaintiffs have failed to show "excusable neglect," even if that doctrine is applicable under the facts of this case, the Court reconsiders the earlier ruling denying partial summary judgment and grants that motion in favor of AFC.

Accordingly,

IT IS ORDERED that "Defendant America's Favorite Chicken Company's Motion for Reconsideration of the Court's July 6, 1994 Order Denying the Motion for Partial Summary Judgment" is GRANTED.

IT IS FURTHER ORDERED that America's Favorite Chicken Company's motion for partial summary judgment on plaintiffs'

ings of those courts. *Greyhound,* 62 F.3d at 737–38. Additionally, the facts in *Drexel Burnham Lambert* and *Alexander's* are more similar to the present circumstances than to those in *Greyhound.*

**20.** Once again, the Court also notes that defendant FMU is not a newcomer to bankruptcy, having undergone its own bankruptcy reorganization in 1987. *See* n. 18, *supra.* Sophistication in bankruptcy was considered by the Sixth Circuit in determining whether the notice to creditors sent in that case was sufficient and whether an attorney's neglect could be visited on his

clients. *In re Pioneer Investment Services,* 943 F.2d at 678. Other courts since the Supreme Court's decision in *Pioneer Investment Services* have also considered the sophistication of creditors in determining the "fault" of a creditor as to the reason for delay in not filing a proof of claim, whether the delay was in the creditor's control and whether the creditor acted in bad faith. *See, e.g., In re Keene Corp.,* 188 B.R. 903, 909 (Bankr. S.D.N.Y.1995). Thus, the Court questions whether, in terms of equity, FMU—and possibly all plaintiffs—have "unclean hands" as to knowledge of bankruptcy procedure.

claims arising from events prior to November 5, 1992, is GRANTED.