United States Court of Appeals,

Fifth Circuit.

No. 94-60393.

In re EAGLE BUS MFG., INC., et al., Debtors.

GREYHOUND LINES, INC., Appellant,

v.

Donna ROGERS, et al., Appellees.

Sept. 1, 1995.

Appeal from the United States District Court for the Southern District of Texas.

Before REYNALDO G. GARZA, HIGGINBOTHAM and PARKER, Circuit Judges.

REYNALDO G. GARZA, Circuit Judge:

On June 4, 1990, Greyhound Lines, Inc. and associated entities ("Greyhound" or "Debtor") commenced Chapter 11 proceedings by filing voluntary petitions for protection under the Bankruptcy Code. Pursuant to Bankruptcy Rule 3003(c)(3), the bankruptcy court set November 19, 1990 (hereinafter the "bar date") as the date by which all creditors had to file their proofs of claim. Twenty-three creditors failed to file their proofs of claim before the bar date. Approximately six to eight months after the bar date passed some of these creditors filed motions for leave to file their respective proofs of claim.

After conducting a hearing on these motions, the bankruptcy court held that Donna Rogers, C.B. and Nancy Burgess, on their own behalf and on behalf of Trey Burgess, and James Fine, Jr. (collectively the "Claimants"), could file untimely proofs of claim.[1] After the district court affirmed the bankruptcy court's rulings, Greyhound filed this appeal. For the reasons stated below, we affirm in part and reverse in part the bankruptcy and district court's findings; we affirm the findings that

---

[1] The bankruptcy court also allowed Kinta Pardo, the Estate of R.L Rose, and Stephen Fry to file proofs of claim after the passage of the bar date. Again, the Debtor disagreed with the lower court and appealed that ruling. However, before the date of oral argument, Stephen Fry and the Rose Estate resolved their disputes with the Debtor. Not long thereafter, Kinta Pardo also settled her claim with the Debtor. Therefore, these parties no longer have an interest in the outcome of this appeal.

allowed the Claimants to file untimely proofs of claim with the sole exception of Donna Rogers. We remand this case to the bankruptcy court to determine if Donna Rogers' failure to file a late claim was excusable neglect.

BACKGROUND

After the bankruptcy court set the bar date, Poorman-Douglas Corporation was appointed to conduct all necessary mailouts on behalf of Greyhound. It mailed packets containing a notice of the bar date, a proof of claim form, notice of the first creditor's meeting, and a map to such meeting to all known creditors and parties in interest on two separate occasions.[2]

Anticipating that a large number of creditors would seek relief from the automatic stay to liquidate their claims outside of bankruptcy, the bankruptcy court entered an order requiring the claimants to participate in Alternative Dispute Resolution ("ADR") prior to hearing any motion on lifting the stay.[3] The purpose of the ADR Order was to approve and adopt a procedure that would serve as an orderly and efficient mechanism for the liquidation and satisfaction of more than 3000 personal injury and property damage claims pending against Greyhound on the petition date.

Twenty-three creditors who failed to file proofs of claim before the bar date filed motions to file late claims.[4] The bankruptcy court consolidated these motions and held a hearing on April 2, 1992. At the hearing, the court made the following findings of facts with respect to the Claimants:

> Donna Rogers' notice was sent to her brother's home, but the evidence was inconclusive as to whether she actually received notice of the bar date.

> James Fine, Jr. denies receipt of the notice of the bar date though the evidence indicates that a notice was sent to him. However, his attorney participated in the ADR program.

> The Burgess family received timely notice of the bar date. They elected to participate in the ADR program and were in the ADR process.

The bankruptcy court ultimately concluded that the failure by James Fine, Jr. ("Fine") and the Burgess

---

[2]The mailouts occurred on August 2, 1990 and October 26, 1990.

[3]In bankruptcy cases personal injury claimants often file motions to lift the automatic stay in order to liquidate their claims in a non-bankruptcy forum.

[4]Of the twenty-three motions filed, the bankruptcy court allowed only thirteen creditors, including the Claimants, to file late proofs of claim.

family to file timely claims was due to excusable neglect and thus they could file claims after passage of the bar date. It also found that Fine and Donna Rogers ("Rogers") could file untimely proofs of claim in light of due process considerations.

The district court affirmed the bankruptcy court, finding that Rogers could file a late claim on due process grounds and that the remaining Claimants could untimely file due to excusable neglect.

## DISCUSSION

### I. *Jurisdiction*

District courts have appellate jurisdiction over "final judgments, orders, and decrees" issued by the bankruptcy court. 28 U.S.C. § 158(a). This jurisdiction includes interlocutory orders and decrees which the bankruptcy court has granted leave to appeal. *Id.* The courts of appeals have jurisdiction over "all final decisions, judgments, orders, and decrees" issued by the bankruptcy court. *Id.* § 158(d). This Court views finality in bankruptcy proceedings in a practical and less technical light to preserve judicial and other resources. *England v. FDIC (In re England),* 975 F.2d 1168, 1171 (5th Cir.1992) (citations omitted). We have determined that "an order which ends a discrete judicial unit in the larger case concludes a bankruptcy proceeding and is a final judgment for the purposes of section § 158(d). Finality in bankruptcy cases is contingent upon the conclusion of an adversarial proceeding within the bankruptcy case, rather than the conclusion of the entire litigation." *Id.* at 1172 (citations omitted).

Rogers argues that this appeal should be dismissed for lack of jurisdiction. She contends that the order allowing the Claimants to file untimely proofs of claim is not a final appealable order because it does not "conclusively" settle the claims before the bankruptcy court. Rogers insists that the procedural context of the case is identical to *Giles World Mktg., Inc. v. Boekamp Mfg., Inc.,* 787 F.2d 746 (1st Cir.1986) and thus we should dismiss the appeal. We disagree.

In *Giles,* the district court affirmed a bankruptcy court order allowing a creditor to file an informal proof of claim after the confirmation of the debtor's reorganization plan. The debtor appealed the district court's judgment on the ground that the proof of claim was untimely filed. The

reviewing court noted that a "final judgment, order, or decree" from a bankruptcy court included orders that "conclusively" determined a separable dispute over a creditor's claim. *Id.* at 748 (citation omitted). Therefore, the court found that the bankruptcy court's order was not final because it neither conclusively allowed the creditor's claim against the debtor nor determined what amount, if any, the debtor owed the creditor. *Id.* In other words, judicial activity involving the exercise of considerable discretion was further expected in the bankruptcy court before these issues could be resolved. *See id.*[5] Thus, our sister court held that the order did not "conclusively" resolve the parties' dispute and dismissed the appeal. *Giles,* 787 F.2d at 748.

In the matter *sub judice* the order granting the motions to file untimely proofs of claim is final and appealable because, unlike the cases cited above, the bankruptcy court was left with no dispute or issue to resolve after entering the order. *See Broken Bow Ranch Inc. v. Farmers Home Admin. (In re Broken Bow Ranch, Inc.),* 33 F.3d 1005, 1008 (8th Cir.1994) (bankruptcy court's order was an appealable final decision because order did not contemplate further significant judicial activity in the bankruptcy case, such as the submission and consideration of a modified plan of reorganization). Indeed, Greyhound's reorganization plan has been confirmed by the bankruptcy court. Under that plan, once a proof of claim is filed it must go through the compulsory ADR program. If the claim is settled in the ADR, it is paid without the bankruptcy court's involvement unless the settlement exceeds $250,000. If such action is required, however, we note that it will not constitute significant

---

[5]Two district courts have specifically held that an order allowing the late filing of a proof of claim is not a final appealable order. *See, e.g., Charter Co. v. Petroleos Mexicanos (In Re Charter Co.),* 76 B.R. 191 (M.D.Fla.1987) *and X-CEL, Inc. v. International Ins. Co. (In Re X-CEL, Inc.),* 68 B.R. 131 (N.D.Ill.1986). However, in each case the district court recognized that the bankruptcy court would invariably have to entertain the merits of the claims to reach a final resolution. In *Charter,* for example, the district court found that the bankruptcy court's order allowing the creditor to file a late claim would be fully reviewable after a determination on the merits of the claim. *In re Charter,* 76 B.R. at 193. More importantly, it found that more litigation involving the creditor was necessary because the bankruptcy court had not yet resolved the status of the creditor's claim nor the final resolution of the pending claim. *Id.* Likewise, in *X-CEL,* the district court concluded that the orders denying the debtor's objections to the late filing of a proof of claim were not appealable because the orders did not conclusively determine a separable dispute over the creditor's claim or priority. *In re X-CEL,* 68 B.R. at 133. In other words, the orders were not appealable because they did not address or resolve the merits of the claim. *Id.* Like *Giles,* the orders from these two cases were not final and appealable because significant judicial activity was still expected in the bankruptcy court in order to resolve the creditor's claims.

judicial activity;  it is a simple ministerial function.

If the ADR fails, on the other hand, the claimant may seek to lift the confirmation injunction so the claim may be litigated in state court.[6]  If the claimant succeeds in that court, the judgment may be satisfied under the plan without any involvement from the bankruptcy court.  For all practical purposes, the bankruptcy court's order ended a discrete judicial unit in the case, thereby concluding an adversarial proceeding in the bankruptcy case.  *In re England,* 975 F.2d at 1171.  Therefore, the bankruptcy court's order is appealable as a final order.

## II. *Due Process*

The bankruptcy court found that Rogers did not receive actual notice of the bar date although a notice, addressed in her name, was mailed to her brother's address.  The court also found that notice of the bar date was mailed to Fine's address even though he denied receiving it.  Based on these findings, the bankruptcy court allowed Rogers and Fine to file late proofs of claim on due process grounds.[7]  On appeal the district court agreed with the bankruptcy court's findings as they applied to Rogers, but disagreed with the conclusion that Fine's due process rights had been violated.  Instead, the district court found that Fine had received reasonable notice to satisfy due process.  Nevertheless, the district court allowed Fine to file an untimely proof of claim under the excusable neglect exception.  Greyhound contends that Rogers and Fine were properly mailed notice of the bar date to their last known address, thereby complying with due process.

We review a bankruptcy court's findings of fact for clear error, which calls for reversal only if, considering all the evidence, we are left with the definite and firm conviction that a mistake was made.  *Affiliated Computer Systems, Inc. v. Sherman (In re Kemp),* 52 F.3d 546, 550 (5th Cir.1995).  When the district court has affirmed the bankruptcy court's findings, our review for clear error is strict.  *Id.*  Issues of law are subject to a *de novo* review.  *Id.*

"A creditor's claim can be barred for untimeliness only upon a showing that it received

---

[6]The claims pending against Greyhound involve personal injuries suits.  Because the bankruptcy court has no jurisdiction to adjudicate these claims, they will proceed to state court (or other appropriate court or agency) if not settled in the compulsory ADR.

[7]Fine was also permitted to file a late proof of claim on the basis of excusable neglect.

reasonable notice." *Oppenheim, Appel, Dixon & Co. v. Bullock (In re Robintech, Inc.),* 863 F.2d 393, 396 (5th Cir.), *cert. denied,* 493 U.S. 811, 110 S.Ct. 55, 107 L.Ed.2d 24 (1989). Determining whether a creditor received adequate notice depends on the facts and circumstances of each case. *Id.* Due process requires notice that is "reasonably calculated to reach all interested parties, reasonably conveys all of the required information, and permits a reasonable amount of time for response." *Id.* A claimant may therefore file a late proof of claim if he can show that failure to allow the filing would be violative of due process.

In addition to due process concerns, Bankruptcy Rule 2002(a)(8) requires that known creditors be given at least 20 days notice by mail of the proofs of claim bar date. The 1983 advisory committee note for this rule indicates that notice by mail is effective upon mailing. *In re Robintech,* 863 F.2d at 395. "Correspondingly, Bankruptcy Rule 9006(e) states that "notice by mail is complete on mailing.' These rules imply that correctly mailed notice creates a presumption that proper notice was given. Further, correctly mailed notice also triggers a parallel common law presumption that proper notice was given." *In re Schepps Food Stores, Inc.,* 152 B.R. 136, 139 (Bankr.S.D.Tex.1993); *In re Longardner & Assocs.,* 855 F.2d 455, 459 (7th Cir.1988), *cert. denied,* 489 U.S. 1015, 109 S.Ct. 1130, 103 L.Ed.2d 191 (1989). *Cf. Beck v. Somerset Technologies, Inc.,* 882 F.2d 993, 996 (5th Cir.1989) ("Proof that a letter properly directed was placed in a U.S. Post office mail receptacle creates a presumption that it reached its destination in the usual time and was actually received by the person to whom it was addressed."). Thus, the question becomes whether the sender properly mailed the notice and not whether the intended recipient received it. *In re Schepps,* 152 B.R. at 139; *Moody v. Bucknum (In re Bucknum),* 951 F.2d 204, 207 (9th Cir.1991). *Cf. Beck,* 882 F.2d at 996 (the question is whether the letter was mailed).

A denial of receipt is insufficient to rebut a presumption that proper notice was given, but it does raise a factual issue. *In re Schepps,* 152 B.R. at 139; *In re Bucknum,* 951 F.2d at 207; *In re Longardner,* 855 F.2d at 459. *Cf. Beck,* 882 F.2d at 996 (employee's testimony that he did not remember receiving the letter and that he did not recall whether the person who signed for it was a co-worker was insufficient to rebut the presumption). Consequently, the issue is whether notice was

properly sent. *In re Schepps,* 152 B.R. at 140. Evidence that the notice was never mailed or that no other creditor received notice will rebut the presumption that proper notice was given. *Id.* "In effect, the presumption may only be overcome by "evidence that the mailing was not, in fact, accomplished.' " *Id.* (quoting *Osborn v. Ricketts (In re Ricketts),* 80 B.R. 495, 498 (Bankr. 9th Cir.1987) (Jones, J., concurring)). To determine if a mailing was accomplished the courts may consider whether the notice was correctly addressed, whether proper postage was affixed, whether it was properly mailed, and whether a proper certificate of service was filed. *Id.*

Mailing a notice by First Class U.S. Mail to the last known address of a creditor satisfies due process because it is "reasonably calculated" to inform the creditor of the bar date for filing proofs of claim. *Mackie v. Production Oil Co.,* 100 B.R. 826, 828 (N.D.Tex.1988); *In re Solvation, Inc.,* 48 B.R. 670, 673 (Bankr.D.Mass.1985). The creditor is responsible for notifying the debtor, trustee, or the court of any changes in her mailing address to guarantee that she be given reasonable notice. *See In re Solvation,* 48 B.R. at 673; *Mackie,* 100 B.R. at 827, 828. If the creditor fails to up-date her address and as a consequence does not receive a notice of the bar date that was properly mailed, she cannot later argue that her due process rights were violated. *See In re Nutri\*Bevco, Inc.,* 117 B.R. 771, 781 (Bankr.S.D.N.Y.1990) (due process does not require receipt of mail; actual timely notice of bar date was mailed to creditor's record address but the creditor's failure to designate an agent or to effectively forward his mail during his three month vacation caused the failure to receive timely notice). *Cf. In re Auto-Train Corp.,* 57 B.R. 566, 567-68 (Bankr.D.D.C.1986) (claimants' failure to advise the court or the trustee of their current addresses constituted waiver of the right to receive notice of the trustee's objections to the claim).

## A.

The courts below found that notice of the bar date was properly mailed to the address provided by Rogers, i.e., her brother's home address. Apart from denying receipt of the notice, she did not present any evidence to show that the notice was not properly mailed. As a matter of fact, the notice was not returned to the sender as undeliverable nor was there a widespread failure in the mailing of notices. She failed to rebut the presumption that she was given proper notice. Moreover,

we note that Rogers herself is to blame for not receiving the notice because she failed to keep Greyhound apprised of any changes in her mailing address. Mailing a notice by First Class U.S. Mail to Rogers' last known address was reasonably calculated to inform her of the bar date for filing proofs of claim. Therefore, we conclude that Rogers' due process rights were not violated.

However, the courts below did not consider whether Rogers' failure to keep Greyhound apprised of her mailing address can constitute excusable neglect under the bankruptcy law. Therefore, we remand this issue to the bankruptcy court for consideration.

B.

The bankruptcy court also found that notice of the bar date was mailed to Fine. There is no evidence in the record to suggest that the notice was not properly mailed to Fine's known address. We find Fine's denial of receipt to be insufficient to rebut the presumption that he was given reasonable notice of the bar date. Thus, we hold that Fine's due process rights were not violated. Yet, the courts below also found that Fine could file his claim due to excusable neglect. We will consider the propriety of that finding below.

III. *Excusable Neglect*

The bankruptcy court may extend the bar date for cause to "permit a late filing if the movant's failure to comply with an earlier deadline "was the result of excusable neglect.' " *Pioneer Inv. Services Co. v. Brunswick Assocs. Ltd. Partnership,* --- U.S. ----, ---- - ----, 113 S.Ct. 1489, 1491-92, 123 L.Ed.2d 74 (1993) (quoting Bankruptcy Rule 9006(b)(1)). In *Pioneer,* the creditors in a Chapter 11 bankruptcy were allowed to file late proofs of claim after the attorney handling their affairs failed to file them prior to the bar date. The Supreme Court held that due to the circumstances of the case, the attorney's failure to file the necessary proofs of claim constituted excusable neglect. *Id.* at ---- - ----, 113 S.Ct. at 1498-90. The Court emphasized that excusable neglect was not limited to errors caused by circumstances beyond the late-filing party's control and concluded that the concept of neglect was "some what elastic" and could include "inadvertent delays." *Id.* at ----, 113 S.Ct. at 1496. *Accord United States v. Clark,* 51 F.3d 42, 43 (5th Cir.1995). However, the Court cautioned that "inadvertence, ignorance of the rules, or mistakes construing the rules [did] not usually constitute

"excusable neglect' ..." *Pioneer,* --- U.S. at ----, 113 S.Ct. at 1496. The Court stressed that the determination of whether a party's neglect of a deadline was excusable was "at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Id.* at ----, 113 S.Ct. at 1498. Thus, in making such a finding, the courts should explore the following:

> the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

*Id.* The Court found these factors to support a finding of excusable neglect. *Id.* at ----, 113 S.Ct. at 1500. More importantly, the neglect was deemed excusable because the bankruptcy court's misleading and inconspicuous notification of the bar date created a "dramatic ambiguity," which caused the failure to file a timely claim. *Id.*

With *Pioneer's* four factors in mind, we turn to the facts of the instant case to determine if the parties' failure to file timely proofs of claims was caused by excusable neglect.

## A. Good Faith

Greyhound does not argue that the Claimants acted in bad faith. Indeed, the record is devoid of anything to suggest that the parties acted in any way other than in good faith.

## B. Prejudice

Another factor to consider is the potential prejudice that a debtor may face if an untimely proof of claim is allowed. The Claimants argue that the Debtor will not be prejudiced by these late filings because it was aware of these claims before negotiating and confirming the reorganization plan. In other words, the Debtor recognized that some of these claims would have to be paid and responded by allocating funds for their satisfaction. Accordingly, they maintain that Greyhound will not be detrimentally impacted by these claims.

> The bankruptcy court evaluated the danger of prejudice to Greyhound and concluded that

> granting the delay in filing proofs of claim will not prejudice the debtor. The debtor knew about these claims and the majority [of claimants] participated in the Alternative Dispute Resolution process ... pursuant to the order of this court. Moreover, there is a limited pool of money for payment of these claims in the plan of reorganization, which means that while other creditors may be prejudiced by a reduction in the payout, the debtor will not be prejudiced. The impact on other unsecured creditors will be relatively insignificant because these claims were known at the time of balloting and there are a limited number of these type of claims.

Despite Greyhound's arguments to the contrary, we agree with the bankruptcy court that it will not be prejudiced by the untimely filing of this handful of claims.[8]

Under *Pioneer,* the central inquiry is whether the *debtor* will be prejudiced. We note that Greyhound's reorganization plan was negotiated and approved *after* Greyhound had notice of these claims. This is not a situation where the debtor's plan was formulated, negotiated, and confirmed before notice was given of a substantial late claim. *See, e.g., In re Drexel Burnham Lambert Group, Inc.,* 148 B.R. 1002, 1007 (S.D.N.Y.1993) ("acceptance of a substantial late claim after consummation of a vigorously negotiated claims settlement and Plan of Reorganization thereon and a distribution of a major part of the assets thereunder, would disrupt the economic model on which the creditors, the debtor and the stockholders reached their agreements"); *In re Alexander's Inc.,* 176 B.R. 715, 722 (Bankr.S.D.N.Y.1995) ("Debtors and other creditors will be prejudiced because the Proof of Claim was filed *after* the Debtors' Plan was formulated, negotiated and confirmed. Debtors had proposed the Plan based upon a claims analysis ... which did not include [claimant's] substantial claim.... Creditors who had timely filed their claims voted on a Plan based on this estimate.... Thus, allowance of [claimant's] claim would disrupt the "economic model' on which all parties reached their agreements.") (emphasis added). Quite the contrary, these late filed claims were clearly expected by the debtor. *In re Alexander's Inc.,* 176 B.R. at 722 (expectation of claim is one factor to consider in determining if the debtor is prejudiced).

Greyhound also asserts that it reasonably believed that the Appellees' claims would be barred because they failed to file timely claims. Accordingly, the Debtor claims it formulated the plan based, in part, on its ability to identify the number and amount of allowed claims. We find Greyhound's argument unpersuasive. If Greyhound had in fact believed that these claims were barred it would not have allowed the Claimants' to participate in the ADR and would not have negotiated with them for

---

[8]Unlike *In re Specialty Equip. Co., Inc.,* 159 B.R. 236 (Bankr.N.D.Ill.1993), allowing the Claimants' to file late claims will not invite the filing of hundreds of additional claims because all the claims that were pending against Greyhound prior to its bankruptcy, with the exception of the Claimants', have been settled or disposed of. In *Specialty,* 231 claimants, holding in excess of $12 million in disputed or unliquidated claims, had not filed their proofs of claim. The court believed that allowing the present late claim would invite all the other creditors to file their claims as well, thereby prejudicing the debtor. *Id.* at 239.

several months after passage of the bar date. Furthermore, we remain unconvinced that resolution of these claims will exhaust the assets in the plan or trigger any future payment obligations by Greyhound.

Finally, though it is not an expressed *Pioneer* factor, Greyhound argues that this Court should also consider and heavily weigh the effect that a late filed claim will have on its creditors. *See, e.g., In Re R.H. Macy & Co., Inc.,* 161 B.R. 355, 361 (Bankr.S.D.N.Y.1993) ("Extending the bar date to allow any of the Movants to file a proof of claim could result in the depletion of assets which would otherwise be available for distribution to creditors who have filed timely proofs of claim."). *But see Manousoff v. Macy's Northeast, Inc. (In re R.H. Macy & Co., Inc.),* 166 B.R. 799 (S.D.N.Y.1994) (prejudice to debtor is a more flexible and complex concept than a simple dollar-for-dollar depletion of assets otherwise available for timely filed claims; the pertinent circumstances includes the size of late claim in relation to estate and disruptive effect the late filing would have upon a plan close to completion, not simply a dollar-for-dollar depletion of assets otherwise available to timely filed creditors). Although we do not decide this issue, we note that even if this factor was considered significant, it would not help Greyhound in this case. As we have stated, the allowance of these late filed claims would minimally affect the creditors because these claims were known and expected at the time of balloting. *Cf. In re Alexander's Inc.,* 176 B.R. at 722 (creditor prejudiced where claim was filed after plan was formulated, negotiated, and confirmed). These claims will not upset the expectations of recovery that supported the creditors' votes for the plan. Indeed, the creditor body, through its representative creditor's committee, elected not to object to these claims. Further, Greyhound has not satisfactorily shown that the size of these claims are sizable in relation to the debtor's estate nor that they would disrupt the distribution of the assets among the timely filed creditors. These handful of claims were anticipated before the plan was negotiated and will not impair the success of the confirmed plan.[9]

---

[9]In *Omni Mfg., Inc. v. Smith (In re Smith),* 21 F.3d 660 (5th Cir.1994), the issue was whether the bankruptcy court was authorized to extend the bar date to enable a creditor, Omni Manufacturing, Inc. ("Omni"), to file a late proof of claim and to contest the dischargeability of the debt owed to it by the debtor. Omni failed to timely file its claim because the debtor failed to properly and timely schedule or list Omni as a creditor. As a result, Omni was not listed as a

## C. Length of Delay

As noted above, because the reorganization plan has been confirmed, these claims, if allowed, would be resolved without necessitating the involvement of the bankruptcy court. These claims would still be required to undergo arbitration and then, quite possibly, litigation. Either way, it was contemplated that resolution of these claims would be an on-going and lengthy process that would continue even after the plan's confirmation. It is difficult to glean how allowance of these claims would be disruptive of that process.

Moreover, though the delay in filing the untimely claims seems egregious—six to eight months—it was incidentally caused by Greyhound. While it is true that the Claimants were provided materials stating that they could not participate in the ADR if their claims were late, Greyhound nevertheless negotiated with the Claimants for months after the passage of the bar date, allowing the claimants to incur further delay and additional expense, without the Debtor ever raising the late claim issue. It seems to us that Greyhound negotiated with the Claimants in an attempt to reach a favorable settlement with the knowledge that if these negotiations were not successful, they could resort to the passage of the bar date as their "ace" in the sleeve. We do not condone such unsavory tactics. If

---

creditor in the debtor's mailing matrix and therefore it had no actual or constructive knowledge of the bankruptcy until four years after it was filed, one year after the deadline to file a proof of claim had passed, and three months after a plan of reorganization had been approved by the creditors. To determine if Omni's debt had been discharged, we turned to the factors listed in *Stone v. Caplan (In re Stone),* 10 F.3d 285 (5th Cir.1994) and *Robinson v. Mann,* 339 F.2d 547 (5th Cir.1964), which we refer to as the *Stone/Robinson* factors. These factors obligate the courts to examine the "reason the debtor failed to list the creditor, the amount of disruption which would likely occur by an untimely listing of the claim, and any prejudice suffered by the listed creditors and the unlisted creditor in question." *In re Smith,* 21 F.3d at 664.

> The third *Stone/Robinson* factor, which evaluated prejudice to the creditors, was found to be critical in that case. After determining that Omni was seriously prejudiced by the late notification of the debtors' bankruptcy, we examined the potential prejudice to other creditors. We stated that "[i]ncluding an *unanticipated* claim such as Omni's in a particular creditor class *after* the plan has been negotiated might upset the expectations of recovery that supported other creditor's votes for the plan. Is it not accurate, however, to say that holding Omni's claim nondischargeable necessarily prejudices the other creditors unless that ruling would impair the success of the confirmed plan." (emphasis added). Although *Smith* dealt with a different legal issue, we nevertheless find, under the facts of the instant case, that including a claim which was anticipated prior to the negotiation and confirmation of the plan will not impair its success and will not prejudice the other creditors.

Greyhound had brought this issue to the Claimants' attention during the early stages of the bankruptcy, they would have filed their untimely claims without delay. We conclude that this delay will not disrupt or adversely impact the effective administration of this case.

## D. Reason for Delay

The standard for determining whether a party's neglect of a deadline is excusable is a flexible one because it is rooted in equity. As such, excusable neglect is not limited to errors caused by circumstances beyond the late filing party's control. *United States v. Clark,* 51 F.3d 42, 43 (5th Cir.1995) (citing *Pioneer,* --- U.S. at ----, 113 S.Ct. at 1496). In the instant case, the failure to file a timely proof of claim was not beyond the control of the Claimants in this case.[10] However, their failure to file timely was due, in part, to the creation of the ADR program mandated by the bankruptcy court. As the bankruptcy court noted, "the ADR order required claimants to participate in ADR prior to any hearing on a motion to lift stay. Had this order not been issued the majority of the claimants would no doubt have filed a motion to lift the automatic stay." But for the requirement to go to ADR, the Claimants would have most probably filed motions to stay the execution months before the bar date.[11] These motions usually constitute informal proofs of claim.

Furthermore, the warning provided to creditors about the need for filing their proofs of claim, regardless of the ADR, was not very conspicuous. Although the warning was clear, it did not necessarily draw the reader's attention.[12] Arguably, some confusion or ambiguity existed regarding the need to file. This ambiguity was further compounded by the fact that Greyhound entertained the Appellees' claims and negotiated with them in the ADR process even though they had not filed timely proofs of claim. Although it was not entirely "dramatic," this ambiguity supports our belief that the

---

[10]As Greyhound points out, approximately 2,000 claimants who elected to participate in the ADR also filed timely proofs of claim. Even so, just because a large number of claimants complied with the filing deadline does not automatically mean that individual claimants cannot be excused for the neglect that occasioned their failure to file on time.

[11]In their briefs, the Claimants steadfastly maintain that they did not file any motions due to the court mandated ADR program. They believed that they were barred from seeking motions to lift the automatic stay until after the ADR was completed.

[12]The warning was embedded in twelve pages of text describing the ADR procedures.

Claimants' neglect was excusable. *See Pioneer,* --- U.S. ----, ----, 113 S.Ct. 1489, 1500, 123 L.Ed.2d 74 (1993) ("dramatic ambiguity" that was created by "peculiar and inconspicuous" placement of bar date in notice of creditor's meeting without an indication of significance of bar date contributed to finding that failure to file timely proof of claim was excusable neglect). In sum, we perceive the Claimants' failure to file timely claims to be the result of simple neglect and not due to some gross or intentional inadvertence.

### E. Equity

After reviewing the circumstances of this case, we conclude that the party's neglect of the bar date was excusable. We believe that the court ordered ADR program was to blame, in part, for the Claimants' failure to file timely proofs of claim, and out of equity, we will allow their claims to be filed. We wholeheartedly agree with the bankruptcy court's following observation:

> The Court used the ADR Order as a method of reducing the number of motions to lift stay filed in this case. In fact, the ADR Order obviated the need to file a motion to lift the stay. But for the ADR Order, the claimants would likely have filed motions to lift stay, which have been routinely held to constitute informal proofs of claims.... [T]he ADR Order was clearly beneficial to the speedy administration of this case and should not be used as a vehicle to punish those claimants who chose to participate.

The ADR program, instituted for the benefit of Greyhound, should not be used to punish the Claimants for their omission. We so hold.

### CONCLUSION

Based on the specific facts of this case, with the exception of Donna Rogers we AFFIRM the courts below and allow the Claimants' to file untimely proofs of claim based on excusable neglect. We also REMAND the case to the bankruptcy court to determine if Rogers' failure to timely file constituted excusable neglect.