# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 10, 2022

Lyle W. Cayce
Clerk

No. 21-20394

In re: CJ Holding Company

*Debtor*,

West Wilmington Oil Field Claimants,

*Appellee*,

*versus*

Nabors Corporate Services, Incorporated; Conway MacKenzie Management Services, L.L.C., *as Unsecured Claims Representative*; Reorganized Debtors,

*Appellants*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:20-CV-3014

Before Owen, *Chief Judge*, and Clement and Engelhardt, *Circuit Judges*.

Edith Brown Clement, *Circuit Judge*:

Sixty-seven creditors of C&J Well Services, Inc. (the Claimants) failed to file timely proofs of claim. After an approximately two-year-and-nine-month delay, the Claimants filed a motion in the bankruptcy court seeking

No. 21-20394

leave to file their respective proofs of claim.  After conducting a hearing, the bankruptcy court denied their motions, holding that the Claimants did not demonstrate that their untimeliness was the result of excusable neglect.  The Claimants appealed, and the district court reversed.

Because the bankruptcy court did not abuse its discretion in determining that the Claimants failed to meet their burden of proving excusable neglect, we REVERSE the judgment of the district court and reinstate the judgment of the bankruptcy court.

I.

Brandyn Ridgeway and Tim Smith are former employees of Nabors Completion and Production Services Co., which was an oil and gas services contractor that performed work in the West Wilmington Oil Field.  In March 2015, Nabors Completion and Production Services Co. merged with C&J Energy Ltd. to become C&J Well Services, Inc. (CJWS).

In April 2015, Ridgeway and Smith filed a putative class action lawsuit against CJWS in California state court, alleging various wage-related claims.  CJWS removed the action to the United States District Court for the Central District of California and moved to compel arbitration pursuant to a company-wide arbitration agreement, which included a class action waiver.  The district court denied the motion, holding that the arbitration agreement and its class action waiver were unenforceable.  CJWS appealed the district court's order to the United States Court of Appeals for the Ninth Circuit.

On July 20, 2016, while the appeal was still pending, CJWS and several of its affiliates (the Debtors) filed voluntary Chapter 11 petitions in the United States Bankruptcy Court for the Southern District of Texas.  Shortly thereafter, CJWS filed a suggestion of bankruptcy in the Central District of California and the Ninth Circuit, resulting in an automatic stay of the wage litigation that was then on appeal.

No. 21-20394

On September 25, 2016, the bankruptcy court issued an order setting the bar date, which is "the date by which all creditors must file their proof of claim in order to be treated as a creditor." *In re DLH Master Land Holding, L.L.C.*, 464 F. App'x 316, 317 n.1 (5th Cir. 2012) (per curiam) (unpublished). The bar-date order required all non-governmental entities wishing to assert a claim against the Debtors to file their respective proofs of claim by November 8, 2016. The next day, the Debtors filed a bar-date notice, which, *inter alia*, contained the following language:

> Except as expressly set forth in this Notice, all entities (except governmental units) holding claims against the Debtors . . . are required to file Proofs of Claim by **November 8, 2016, at 5:00 p.m., prevailing Central Time.** Except as expressly set forth in this Notice, the Claims Bar Date applies to all types of claims against the Debtors that arose prior to the Petition Date, including secured claims, unsecured priority claims, and unsecured non-priority claims.
>
> . . .
>
> Pursuant to the Bar Date Order and in accordance with Bankruptcy Rule 3003(c)(2), if you or any party or entity who is required, but fails, to file a Proof of Claim in accordance with the Bar Date order on or before the applicable Bar Date, please be advised that:
>
>     a.    YOU WILL BE FOREVER BARRED, ESTOPPED, AND ENJOINED FROM ASSERTING SUCH CLAIM AGAINST THE DEBTORS (OR FILING A PROOF OF CLAIM WITH RESPECT THERETO);
>
>     b.    THE DEBTORS AND THEIR PROPERTY SHALL BE FOREVER DISCHARGED FROM ANY AND ALL INDEBTEDNESS OR LIABILITY

3

No. 21-20394

WITH RESPECT TO OR ARISING
FROM SUCH CLAIM.

The Debtors served the bar-date notice on all putative class members and published the same in USA Today.  Taking heed of the bar-date order and notice, on November 7, 2016, Ridgeway and Smith, as the representatives of the putative class, each filed a proof of claim for $14,029,348.87.[1]  In addition, twenty-seven putative class members filed individual proofs of claim.

On December 16, 2016, the bankruptcy court entered an order confirming the Debtors' Second Amended Joint Plan of Reorganization (the Plan).  Like the bar-date notice, the Plan contained language explicitly disallowing proofs of claim filed after the bar date: "[A]ny and all Proofs of Claim Filed after the Bar Date shall be deemed disallowed and expunged as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court."  The Plan also permanently enjoined any party whose claim had been discharged from later maintaining that claim against the Debtors:

> [A]ll Entities who have held, hold, or may hold Claims or Interests that have been released, discharged, or are subject to exculpation are permanently enjoined, from and after the Effective Date, from . . . commencing or continuing . . . any action or other proceeding . . . in connection with or with respect to any such Claims or Interests [and] enforcing, attaching, collecting or recovering by any manner or means any judgment[.]

---

[1] The sum of these amounts is approximately $28,058,698.  However, at oral argument before the district court, the Claimants' counsel apparently conceded that he could recover, at most, $14,029,348.87.  *See W. Wilmington Oil Field Claimants v. CJ Holding Co.*, No. CV H-20-3014, 2021 WL 3356371, at *6 n.2 (S.D. Tex. June 29, 2021).

No. 21-20394

Also in December 2016, Nabors Corporate Services, Inc. (Nabors) entered into a settlement agreement with CJWS pursuant to which it agreed to continue indemnifying CJWS for certain unsecured claims, including the claims that were part of the California wage litigation.[2]  The agreement also authorized Nabors to object to any proofs of claim for which it was obligated to indemnify CJWS.

On February 1, 2017, the bankruptcy court entered an agreed order lifting the automatic stay and granting Ridgeway and Smith, as well as the putative class members, relief from the Plan injunction so that they could pursue their claims in the California wage litigation that remained on appeal in the Ninth Circuit.  The parties reserved their rights to challenge "the validity of the purported 'class' proofs of claim" filed by Ridgeway and Smith.

The following February, the Ninth Circuit reversed the district court, holding that the arbitration provision, including the class action waiver, was enforceable.  *See Ridgeway v. Nabors Completion & Prod. Servs. Co.*, 725 F. App'x 472, 474 (9th Cir. 2018) (unpublished).  The Ninth Circuit's opinion had the practical effect of disallowing any class from being certified, meaning that all claims by the purported "class" members had to be arbitrated individually.  Accordingly, on remand, the district court dismissed the plaintiffs' individual claims.[3]  *See Ridgeway v. Nabors Completion & Prod.*

---

[2] Nabors Corporate Services, Inc. is an affiliate of Nabors Completion and Production Services Co. vis-à-vis a shared parent company—Nabors Industries Ltd.  Prior to the initiation of the bankruptcy, Nabors had agreed to indemnify CJWS with respect to the claims in the California wage litigation.  After the Debtors filed for bankruptcy, Nabors agreed to maintain that contractual indemnity in favor of CJWS.

[3] However, it did not dismiss plaintiffs' claims made under California's Private Attorneys General Act (PAGA).

*Servs. Co.*, No. 15-CV-3436-DDP-JPR, 2018 WL 3569341, at *4 (C.D. Cal. July 23, 2018).

In response to the Ninth Circuit's decision, ninety-six putative class members initiated individual arbitrations against CJWS regarding the California wage-related claims.  Of those ninety-six, twenty-nine had filed individual proofs of claim in the bankruptcy proceeding by the bar date; the remaining sixty-seven—the Claimants—had not.  On October 1, 2018, Nabors filed an omnibus objection to the proofs of claim arguing, *inter alia*, that the Claimants could not rely on class proofs of claim in light of the Ninth Circuit's decision enforcing the arbitration clause and class action waiver.

Meanwhile, the parties had agreed to a global mediation of the California wage-related litigation, which was scheduled to occur on December 13, 2018.  So, the bankruptcy court abated proceedings related to Nabors' objection to the proofs of claim pending the outcome of the mediation.  Perhaps unsurprisingly, the mediation was unsuccessful, so the parties returned to bankruptcy court.  There, Ridgeway and Smith, along with the other putative class members, asked the bankruptcy court to interpret its February 1, 2017 agreed order lifting the automatic stay and granting relief from the Plan injunction.  On July 16, 2019, the bankruptcy court held a hearing on that motion, as well as Nabors' objection.

At the conclusion of the hearing, the bankruptcy court sustained Nabors' objection and disallowed the putative "class" proofs of claim filed by Ridgeway and Smith.  It also ruled that Ridgeway and Smith, as well as the twenty-seven putative class members who had timely filed individual proofs of claim, could proceed in individual arbitrations.  Finally, the bankruptcy court informed the Claimants that they could file a motion seeking leave to file late proofs of claim.

No. 21-20394

The Claimants did so on August 19, 2019, and the bankruptcy court held a hearing on that motion on December 18, 2019. At the end, the bankruptcy court denied the Claimants' motion, holding that the Claimants had failed to meet their burden of showing excusable neglect under the factors announced by the Supreme Court in *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380 (1993) (*Pioneer* factors).

First, the bankruptcy court held that granting the Claimants' motion would prejudice the Debtors, as (a) there was no certainty that Nabors would honor its indemnity obligations, and (b) doing so could open the floodgates for other claimants to seek leave to file late claims, which would impose additional costs on the Debtors. Second, it held that the delay between the bar date and the Claimants' motion was unreasonably long, was within the Claimants' reasonable control, and negatively impacted the judicial proceeding. Third, it held that the Claimants failed to carry their burden of showing good faith.

The Claimants timely filed a notice of appeal in the United States District Court for the Southern District of Texas. Following a hearing, the district court reversed and remanded the case to the bankruptcy court for further proceedings. *W. Wilmington Oil Field Claimants v. CJ Holding Co.*, No. CV H-20-3014, 2021 WL 3356371 (S.D. Tex. June 29, 2021). It held that every *Pioneer* factor weighed in favor of the Claimants. *Id.* at *11. CJWS timely appealed.

II.

"Our review is . . . focused on the actions of the bankruptcy court." *In re Age Refin., Inc.*, 801 F.3d 530, 538 (5th Cir. 2015); *In re ValuePart, Inc.*, 802 F. App'x 143, 146 (5th Cir. 2020) (unpublished), *cert. denied sub nom. Jinil Steel Co. v. ValuePart, Inc.*, 141 S. Ct. 556 (2020). "We review the bankruptcy court's refusal to allow a late-filed proof of claim for abuse of

discretion." *In re ValuePart*, 802 F. App'x at 146 (citing *Pioneer*, 507 U.S. at 398–99). We review the bankruptcy court's component findings of fact for clear error, and its conclusions of law de novo. *In re Age Refin.*, 801 F.3d at 538.

## III.

The sole issue in this case is whether the bankruptcy court abused its discretion by denying the Claimants' motion for leave to file late proofs of claim. That, in turn, depends on whether the Claimants' failure to file timely proofs of claim was the result of excusable neglect.

In determining whether the Claimants established excusable neglect, we consider the four *Pioneer* factors: (1) "the danger of prejudice to the debtor," (2) "the length of the delay and its potential impact on judicial proceedings," (3) "the reason for the delay, including whether it was within the reasonable control of the movant," and (4) "whether the movant acted in good faith." *In re Eagle Bus Mfg., Inc.*, 62 F.3d 730, 737 (5th Cir. 1995) (quoting *Pioneer*, 507 U.S. at 395). The inquiry is "at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Id.* (quoting *Pioneer*, 507 U.S. at 395). "The burden to show excusable neglect is on the movant—i.e., the creditor seeking to file a late claim." *In re ValuePart*, 802 F. App'x at 147 (citing *In re DLH*, 464 F. App'x at 318).

### *Danger of Prejudice to the Debtor*

The danger-of-prejudice factor weighs in favor of the Claimants. In considering the extent to which the allowance of an untimely proof of claim will prejudice the debtor, we consider when the debtor became aware of the claim. *See In re Eagle Bus*, 62 F.3d at 737–38. When the debtor is on notice of a claim *prior to* the negotiation and confirmation of the plan of reorganization, allowance of the late-filed claim is less prejudicial to the

No. 21-20394

debtor than it would be if the debtor had been unaware of the claim at that time. *Id.* That is because, when a debtor is on notice of a claim prior to negotiation and confirmation of a reorganization plan, it has an expectation of that claim and can factor it into the plan. *Id.*

The bankruptcy court concluded that allowing the Claimants to file untimely proofs of claim posed a danger of prejudice to the Debtors because Nabors might not honor its indemnification obligations as to those claims. Moreover, it determined that allowing late-filed proofs of claim would potentially open the floodgates for other Claimants to come forward with their own late proofs of claim against the Debtors. The district court disagreed, holding that the Plan incorporated Nabors' promise of indemnification, that the record did not indicate that there was any risk of it refusing to honor its indemnification obligations, and that there was a low risk of additional claimants coming forward to seek relief from the bar date. *W. Wilmington Oil Field Claimants*, 2021 WL 3356371, at *6–7. More importantly, it held that, under *Eagle Bus*, there was little danger of prejudice to the Debtors given that the Debtors were on notice of the Claimants' claims *prior to* the negotiation and confirmation of the Plan. *Id.* at *6.

Even considering the deferential standard of review, we are left with the impression that the bankruptcy court did not apply the law appropriately as to this factor. *E.g.*, *In re Bodenheimer, Jones, Szwak, & Winchell L.L.P.*, 592 F.3d 664, 675 & n.44 (5th Cir. 2009) ("[A] bankruptcy court abuses its discretion when it bases its decision on legally incorrect principles."). While the bankruptcy court may be correct that granting the Claimants relief from the bar date could cause the Debtors *some* prejudice in terms of extending the bankruptcy proceeding, the district court appropriately applied *Eagle Bus* and correctly determined that this factor favors the Claimants.

9

The record reflects that the Debtors had notice of the Claimants' claims from virtually the beginning of the California wage litigation.  This means that, by the time they negotiated and formulated the Plan, they had at least some expectation of those claims.  So, the allowance of those claims would not "disrupt the economic model on which the creditors[] [and the Debtors] . . . reached their agreement[.]"  *See In re Eagle Bus*, 62 F.3d at 737–38 (quoting *In re Drexel Burnham Lambert Grp., Inc.*, 148 B.R. 1002, 1007 (S.D.N.Y. 1993)).  This particular consideration was central to the prejudice analysis in *Eagle Bus*, and it cuts in favor of the Claimants here.

Moreover, the Debtors participated in a global mediation with the Claimants' claims in mind.  Granted, Nabors and the Debtors were always careful to preserve their objections—or at least their right to object—to a class proof of claim.  However, under *Eagle Bus*, Nabors' and the Debtors' participation in a global mediation to resolve all claims, including those belonging to the Claimants, suggests that, at a minimum, they recognized the existence of those claims and the possibility that they might ultimately be allowed in the bankruptcy proceeding.  *See In re Eagle Bus*, 62 F.3d at 738 ("If [the Debtor] had in fact believed that these claims were barred it would not have allowed the Claimants to participate in the ADR and would not have negotiated with them for several months after passage of the bar date.").

The Debtors rejoin, arguing that they will be prejudiced by the late claims because adding sixty-seven additional claims will prolong the bankruptcy and, consequently, impose on them additional legal and other costs.  But this argument is unpersuasive.  We are not aware of any controlling authority standing for the proposition that additional litigation costs and other legal fees incurred by the debtor due to the allowance of a late claim constitutes prejudice to the debtor.  If that were the case, then the prejudice factor would be a dead letter—it would cut in the debtor's favor every time a creditor moved for relief from the bar date.

No. 21-20394

The Debtors further argue that allowance of the late claims will prejudice them because there is a chance that Nabors will refuse to honor its indemnification obligations as to those claims. But this argument ignores the fact that the Plan includes a disputed claims reserve, which was calculated at least partly based on the amount of Ridgeway and Smith's class claim. As the district court correctly observed, the existence of a disputed claims reserve mitigates against the risk that the Debtors will face unexpected losses in the event that Nabors does indeed refuse to honor its indemnity obligations. *W. Wilmington Oil Field Claimants*, 2021 WL 3356371, at *6.

Accordingly, the prejudice factor weighs in favor of the Claimants. And we note that this factor is *not* entitled to any kind of disproportionate weight. The Claimants urged to the bankruptcy court, and again to this court that, under *Eagle Bus*, the prejudice factor is the central factor in determining excusable neglect. That is wrong. *Eagle Bus* says only that prejudice to the debtor, *as opposed to prejudice to the unsecured creditors*, is the central inquiry. *See In re Eagle Bus*, 62 F.3d at 737–38. It does not say that the prejudice factor is more important than the other three *Pioneer* factors.

Nor have we authoritatively held that the good faith factor is paramount, as suggested by the bankruptcy court. Indeed, some lower courts within this circuit appear divided as to the most important factor. *Compare In re C. Lynch Builders, Inc.*, No. 06-51571-C, 2007 WL 2363029, at *6 (Bankr. W.D. Tex. Aug. 15, 2007) (holding that the reason-for-delay factor is the most important), *and Taylor v. Realty Execs. Int'l, Inc.*, No. 08-CA-746-LY, 2008 WL 11333780, at *3 (W.D. Tex. Dec. 12, 2008), report and recommendation adopted, No. A-08-CA-746-LY, 2009 WL 10669227 (W.D. Tex. Feb. 9, 2009) (same), *with Clark v. Am.'s Favorite Chicken Co.*, 190 B.R. 260, 267 (E.D. La. 1995) (suggesting that prejudice to the debtor is central). And at least two of our sister circuits have held that the reason-for-delay factor is paramount. *In re Enron Corp.*, 419 F.3d 115, 122 (2d Cir. 2005);

11

No. 21-20394

*Graphic Commc'ns Int'l Union, Loc. 12-N v. Quebecor Printing Providence, Inc.*, 270 F.3d 1, 5 (1st Cir. 2001); *see also FirstHealth of Carolinas, Inc. v. CareFirst of Md., Inc.*, 479 F.3d 825, 829 (Fed. Cir. 2007) (deferring to the Trademark Trial and Appeal Board's determination that the reason-for-delay factor was of paramount importance).

The weight of persuasive authority counsels us against giving the prejudice factor disproportionate weight. But neither do we extend our precedent here to hold that any other *Pioneer* factor is more important than the others. We hold only that, under the specific facts in this case, the prejudice factor favors the Claimants.

*Length of Delay and its Potential Impact on Judicial Proceedings*

The bankruptcy court did not abuse its discretion by holding that the length of delay factor weighs in favor of the Debtors. The Claimants did not file their motion for relief from the bar date until *two years and nine months* after the bar date passed. The bankruptcy court determined that allowing the delay to continue would negatively impact the resolution of the case, but it did not provide specific reasons why. At the December 18, 2019 hearing, it stated as follows:

> This case has been going on since 2016. It needs to come to an end. There are both real monetary costs, as well as the -- as well as just being in a bankruptcy case for this period of time. . . . In terms of the length of the delay and the potential impact, this case is nearing conclusion. It needs to end.

The district court disagreed, reasoning that "[r]eorganization plans typically 'contemplate[] that resolution of [late-filed] claims' will 'continue even after the plan's confirmation,' and the plan here so provided." *W. Wilmington Oil Field Claimants*, 2021 WL 3356371, at *7 (quoting *In re Eagle Bus*, 62 F.3d at 739).

12

No. 21-20394

We disagree with the district court. While it may be true that some plans of reorganization contemplate resolution of late-filed claims, there is no indication that such was the case here. Rather, the Plan explicitly provided that claims not filed by the bar date "shall be deemed disallowed and expunged as of the Effective Date" of the Plan—the sole exception being claims that the bankruptcy court deemed timely filed by final order. That the Debtors had notice of the general existence of Claimants' claims pre-Plan confirmation does not mean that they expected to have to resolve those claims even if they were filed *late*. The Plan contained specific provisions protecting the Debtors from having to do just that.

Moreover, courts in this circuit have denied motions for leave to file late proofs of claim after far shorter delays than the one here. For example, in *ValuePart*, a panel of this court determined that the bankruptcy court did not abuse its discretion by denying the claimant's motion for leave to file a one-year-late proof of claim. *See In re ValuePart*, 802 F. App'x at 148; *see also In re DLH*, 464 F. App'x at 318–19 (upholding denial of motion for leave to file proof of claim forty-two days late); *In re ASARCO, LLC*, No. 05-21207, 2008 WL 4533733, at *3 (Bankr. S.D. Tex. Oct. 3, 2008) (denying motion for leave to file proof of claim just over two months after the supplemental bar date). At least two of our sister circuits have done the same. *See, e.g.*, *In re Enron Corp.*, 419 F.3d at 130 (holding that the bankruptcy court did not abuse its discretion in determining that claimant's six month delay in filing proof of claim favored the debtor); *In re KMart Corp.*, 381 F.3d 709, 714 (7th Cir. 2004) (upholding the bankruptcy court's determination that claimant's two-and-a-half month delay in filing motion for leave to file late proof of claim favored the debtor).

With respect to the delay's impact on judicial proceedings, the Claimants presented different arguments and evidence to the bankruptcy court versus the district court. Before the bankruptcy court, the Claimants

presented virtually no evidence regarding the delay's impact on judicial proceedings. In fact, the bankruptcy court took particular issue with the fact that the Claimants' counsel did not put on a single witness to testify as to any of the *Pioneer* factors. Rather, the Claimants' counsel simply presented argument, the vast majority of which had nothing to do with the delay's impact on judicial proceedings.

It was a different story before the district court. There, the Claimants' counsel argued that the delay would have minimal impact on the judicial proceeding because:

- The first 27 arbitrations were scheduled, and 8 were finished;
- The final arbitration hearings take roughly one day to complete;
- Liability is often resolved in favor of the creditor-appellant in a dispositive motion, leaving only damages for the final arbitration hearing;
- Corporate representatives appear by video;
- Prerecorded testimony may suffice;

Based on this argument, the district court determined that the delay's impact on judicial proceedings would be minimal. It found that arbitrations for the Claimants who did not timely file proofs of claim would likely proceed quickly following the resolution of the arbitrations for the Claimants who did. *W. Wilmington Oil Field Claimants*, 2021 WL 3356371, at *8–9.

But the district court's reliance on this reasoning is misplaced for two reasons. First, as the Debtors point out, this argument was not properly presented to the bankruptcy court. The bankruptcy court did not have the benefit of considering this argument, yet it formed a basis for the district court's decision on this factor. *See, e.g.*, *In re CPDC, Inc.*, 337 F.3d 436, 443 (5th Cir. 2003) (holding that under Bankruptcy Rule 8006, items may not be "added to the record on appeal to the district court if they were not part of

the record before the bankruptcy court"); *D.A. ex rel. Latasha A. v. Houston Indep. Sch. Dist.*, 629 F.3d 450, 457 (5th Cir. 2010) ("[A]rguments by counsel are not evidence."); *see generally Theriot v. Par. of Jefferson*, 185 F.3d 477, 491 n.26 (5th Cir. 1999) ("An appellate court may not consider new evidence furnished for the first time on appeal and may not consider facts which were not before the district court at the time of the challenged ruling." (citing *Great Plains Equip., Inc. v. Koch Gathering Sys., Inc.*, 45 F.3d 962 (5th Cir. 1995))).

Second, even if it were properly before the district court, and thus appropriate for us to consider, the Claimants' argument also permits the opposite inference. Accepting as true that the individual arbitrations each take about one day to complete, permitting the Claimants to file late proofs of claim could add, at a minimum, two to three months to the wage litigation and bankruptcy. And the Debtors even dispute that it would add only two to three months; they claim that it could take *years* to conclude the additional arbitrations and close out the wage litigation and the bankruptcy.

Ultimately, the bankruptcy court did not have the benefit of considering this particular argument, or the Debtors' response thereto. Thus, the district court should not have considered it when evaluating this factor. But even if we were to consider its merits on appeal, it permits the reasonable inference that the delay that would result from allowing sixty-seven additional arbitrations to proceed could significantly impact the resolution of the wage litigation and bankruptcy.

For these reasons, the bankruptcy court did not abuse its discretion in finding that the length-of-delay factor weighs in favor of the Debtors.

### *Reason for the Delay*

The bankruptcy court did not abuse its discretion by determining that the third factor also favors the Debtors. In considering this factor, courts are

less likely to find excusable neglect when the reason for the delay was within the movant's reasonable control. *In re ValuePart, Inc.*, 802 F. App'x at 147–48.

The bankruptcy court concluded that the Claimants were completely responsible for the delay:

> There is no good explanation for why this occurred especially when you view the fact that 29 people filed proofs of claim that were timely. Some of which, by Counsel that appear before me today. And there's been no good explanation about that. And there just simply isn't one other than as previously mentioned on the Record. The reason for the delay, again, is just attorney incompetence. And *Pioneer* talks about what the purpose of excusable neglect is for. It's not to cure malpractice. Was the delay within the reasonable control of the Movants? Absolutely, 100 percent at all times.

The district court disagreed. *W. Wilmington Oil Field Claimants*, 2021 WL 3356371, at *9–11.

First, it credited the Claimants' counsel's argument that he did not have contact information for each absent putative class member due to the stay of class discovery in the California litigation. *Id.* at *9. Second, it concluded that there was "uncertainty over whether aggregate litigation was appropriate" given the representative nature of the Claimants' PAGA claims. *Id.* Third, the district court looked to the fact that the Debtors negotiated and mediated with the Claimants past the bar date. *Id.* at *10. Fourth, it determined that the bankruptcy court's agreed order lifting the automatic stay and granting relief from the Plan injunction "added to the uncertainty." *Id.* at *9. That was so, the district court explained, because the agreed order "gave the creditor-appellants the right to 'proceed to trial and judgment on or settlement of the' California wage litigation" but "did not clearly preclude individual arbitrations or limit individual arbitrations to

those who had timely filed individual proofs of claim." *Id.* (quoting the bankruptcy court's agreed order).

We do not find these grounds persuasive. Regarding the first, it was not presented to the bankruptcy court. That notwithstanding, it does not explain why the Claimants' counsel was unable to access the Claimants' contact information between the time that the California wage litigation commenced and the time the automatic stay went into effect. Nor does it explain why the Claimants did not or could not themselves file individual proofs of claim once they received the bar-date notice.

The second reason is inapposite. The dispute here concerns whether the Claimants should be granted leave to file untimely proofs of claim with respect to their non-PAGA claims. Indeed, PAGA claims are substantively and procedurally distinct from non-PAGA claims.

The third ground is equally unavailing. It was not until May 2018 that the Debtors and Claimants reached an agreement about participating in a global mediation of all claims. That is one-and-a-half years *after* the bar date. It does not explain why the Claimants were unable to file their proofs of claim *by* the bar date. Moreover, as the Debtors argue, that they prepared to mediate the Claimants' claims does not compromise their position that those claims should still be disallowed. By agreeing to mediate, the Debtors had to prepare to defend against twenty-nine timely filed claims; given the state of the case, it was not unreasonable for them also to prepare to defend against the remaining sixty-seven while simultaneously maintaining and preserving their objections to those claims.

As for the fourth reason, the district court disagreed with the bankruptcy court's interpretation of its own order. The bankruptcy court stated that the agreed order was "very clear":

No. 21-20394

> That is not an authorization [for] 96 individuals to go file individual claims. . . . So to the extent that parties are asserting in any litigation that that order that I signed authorized an individual to proceed to arbitration, it doesn't come anywhere close to that, it was never the intent.

The district court took the opposite view—that the order did *not* clearly prohibit individual arbitrations. *W. Wilmington Oil Field Claimants*, 2021 WL 3356371, at *9.

We disagree with the district court. The bankruptcy court entered the agreed order three months *after* the bar date. Any confusion that resulted from the agreed order cannot explain why the Claimants did not file their proofs of claim *by* the bar date. More importantly, the Claimants were on notice that the class proof of claim was challenged. It is evident from the language of the agreed order itself that the validity of a class proof of claim was still very much in the air at the time the bankruptcy court entered the order. The Claimants could have, at that time, protected themselves by filing individual proofs of claim—given that they knew the Debtors preserved their objections to a class proof of claim. But they did not.

At bottom, none of the reasons for delay articulated by the district court adequately explain why some putative class members, but not others, filed individual proofs of claim by the bar date. The record reflects that all putative class members were served with the bar-date notice. Twenty-seven putative class members (not including Ridgeway and Smith) took it upon themselves to file individual proofs of claim. Sixty-seven did not, of no fault of the Debtors. The Claimants took a risk that a class proof of claim would be allowed; that risk did not pan out for the Claimants, and the Debtors are not responsible for the consequences that followed.

"Excusable neglect is the failure to timely perform a duty due to circumstances that were *beyond the reasonable control* of the person whose

duty it was to perform." *In re ValuePart, Inc.*, 802 F. App'x at 146 (emphasis added) (quoting *In re Smith*, 21 F.3d 660, 666 (5th Cir. 1994)).  Most of what caused the delay in this case was not beyond the reasonable control of the Claimants, whose duty it was to file timely proofs of claim.  *See id.* at 148 ("[The claimant] has not shown that [the reason for the delay] was based on factors akin to incarceration or ill health." (citing *Pioneer*, 507 U.S. at 393)).

For these reasons, the bankruptcy court did not abuse its discretion by finding that this factor weighs in favor of the Debtors.

### *Good Faith*

Finally, the bankruptcy court did not abuse its discretion in determining that this factor weighs in the Debtors' favor.  The bankruptcy court concluded that the Claimants failed to carry their burden of showing that they acted in good faith—primarily due to the "acts of their counsel," which the bankruptcy court found verged on malpractice.  Whereas, the district court determined, without any analysis, that there was no evidence that the Claimants acted in bad faith.  *W. Wilmington Oil Field Claimants*, 2021 WL 3356371, at *5.

The Debtors argue that the Claimants' and their counsel's failure to act diligently throughout the bankruptcy proceeding was so severe that it undermines their argument that they acted in good faith.  We agree.  To be sure, we have not held authoritatively that lack of diligence constitutes bad faith *per se*.  Nor do we do so now.  But other courts have held, in persuasive fashion, that lack of diligence can at least cast doubt on a claim of good faith. *See, e.g.*, *In re ASARCO*, 2008 WL 4533733, at *4 (holding that claimant did not act in bad faith but explaining that courts consider lack of diligence in determining whether claimant proved good faith); *see also In re Am. Classic Voyages Co.*, 405 F.3d 127, 134 (3d Cir. 2005) (holding that claimant's lack of diligence was not necessarily bad faith, but it was severe enough such that it

could not overcome the other three *Pioneer* factors, which favored the debtor); *In re KMart Corp.*, 381 F.3d at 716 (holding that this factor was "inconclusive" where claimant waited until the "eleventh hour" to file proof of claim and failed to act diligently after filing).

Here, the Claimants' and their counsel's failure to move the bankruptcy court to apply Federal Rule of Civil Procedure Rule 23 to their purported class proof of claim at any point in the bankruptcy proceeding evinces both a severe lack of diligence and a misunderstanding of bankruptcy procedural rules.  First, it is not yet settled within this Circuit whether a class proof of claim is even permissible.  There is a distinction between Rule 23's operation in adversary proceedings and its operation in contested matters, which include the claims process.  *See In re TWL Corp.*, 712 F.3d 886, 893 (5th Cir. 2013).  Whereas Rule 23 is automatically applicable in adversary proceedings, it does not necessarily apply to proofs of claim.  *Id.*; *see also* Fed. R. Bankr. P. 9014(c) (omitting Bankruptcy Rule 7023 from the list of bankruptcy rules that are automatically applicable to contested matters).  Rather, it is within a bankruptcy court's *discretion* under Bankruptcy Rule 9014 whether to apply Rule 23 to a proof of claim.  *Id.*

Granted, the majority of circuits that have addressed the issue permit class proofs of claim.  *See In re Vanguard Nat. Res., LLC*, No. 17-30560, 2017 WL 5573967, at *4 (Bankr. S.D. Tex. Nov. 20, 2017) (collecting cases).  However, this court has not spoken definitively on the issue.  Yet, since 2016, the Claimants have ostensibly proceeded under the assumption that a class proof of claim would ultimately be available to them.  Such is not settled law in this Circuit, and the Claimants' reliance on unsettled law casts serious doubt on their claim of good faith.

Second, even if the Claimants had moved the bankruptcy court to apply Rule 23 to their purported class proof of claim, they had a second

hurdle to overcome.  Namely, the bankruptcy court would still have had to certify the class proof of claim.  Only once the bankruptcy court determines, in its *discretion*, that Rule 23 applies does it then evaluate whether the proposed class meets Rule 23's requirements.  *In re TWL Corp.*, 712 F.3d at 893–94.

Thus, the Claimants' failure to move the bankruptcy court to apply Rule 23 to their purported class proof of claim evinces both a lack of diligence and a misunderstanding of bankruptcy procedure.  While the same does not necessarily amount to bad faith under any controlling authority of which we are aware, it certainly does not do the Claimants any favors for purposes of meeting their burden to show good faith.  And even if the Claimants' failure to move the bankruptcy court to apply Rule 23 was mere inadvertence or mistake, that does not constitute excusable neglect under *Pioneer*.  *See Pioneer*, 507 U.S. at 392.[4]

Accordingly, the bankruptcy court did not abuse its discretion by determining that this factor cuts in favor of the Debtors.

## IV.

In sum, the bankruptcy court erred in finding for the Debtors as to the first factor.  However, the bankruptcy court did not err in finding for the Debtors as to the other three.  Given the exceptionally deferential standard of review applicable here, and because the prejudice factor does *not* outweigh the other three *Pioneer* factors, we cannot say that the bankruptcy court abused its discretion by denying the Claimants' motion for relief from the bar

---

[4] The Claimants' counsel's failure to move the bankruptcy court to apply Rule 23 to the purported class proof of claim was not the only mistake he made.  On multiple occasions before the district court, the Claimants' counsel attributed the untimeliness of the Claimants' proofs of claim to inadvertence and mistake.

date. *See, e.g.*, *In re Enron Corp.*, 419 F.3d at 129 ("[W]e are particularly reluctant—absent evident arbitrariness—to substitute our judgment for that of the bankruptcy judge who has presided over the proceedings[] [and] who is most familiar with the parties and the potential impact of any late-filed claim[.]").

The judgment is REVERSED.